[This opinion has been published in *Ohio Official Reports* at 73 Ohio St.3d 141.]

THE STATE OF OHIO, APPELLEE, V. D'AMBROSIO, APPELLANT.

[Cite as *State v. D'Ambrosio*, 1995-Ohio-129.]

*Criminal law—Aggravated murder—Reaffirmance of death penalty by court of appeals after remand by Ohio Supreme Court upheld, when.*

(No. 94-103—Submitted May 24, 1995—Decided August 16, 1995.)

APPEAL from the Court of Appeals for Cuyahoga County, No. 57448.

_____

{¶ 1} This appeal represents the second occasion on which the case *sub judice* has reached this court for review. On October 6, 1988, appellant, Joe D'Ambrosio, Thomas "Mike" Keenan and Edward Espinoza were jointly indicted on four separate counts in connection with the murder of Anthony Klann. The indictment charged each defendant with (1) aggravated murder with prior calculation and design, R.C. 2903.01(A); (2) aggravated felony murder, R.C. 2903.01(B); (3) kidnapping, R.C. 2905.01; and (4) aggravated burglary, R.C. 2911.11. On February 9, 1989, a three-judge panel found appellant guilty on all counts charged in the indictment. (The verdict was announced February 21, 1989, following the conclusion of Keenan's trial.) The panel thereafter determined that the aggravating circumstance outweighed the mitigating factors beyond a reasonable doubt, and sentenced appellant to death on the aggravated murder counts.

{¶ 2} The court of appeals affirmed the convictions and the sentence of death. Thereafter, this court affirmed the convictions in *State v. D'Ambrosio* (1993), 67 Ohio St.3d 185, 616 N.E.2d 909 (*D'Ambrosio I*), but remanded the case to the court of appeals for an independent review of the death sentence because several potentially important defense mitigation exhibits were missing from the record.

{¶ 3} A summarization of the facts established in *D'Ambrosio I* is warranted for the instant appeal.[1]  On the evening of Friday, September 23, 1988, Anthony Klann ("victim") and Paul "Stoney" Lewis visited a Cleveland bar called "The Saloon." While in the bar, Lewis met Thomas "Mike" Keenan, his former employer. The two conversed, left the bar in Keenan's truck, and drove to another bar called "Coconut Joe's."  Shortly thereafter, the victim, Edward Espinoza and appellant arrived at Coconut Joe's.  Each man eventually left Coconut Joe's at various times throughout the evening.

{¶ 4} At approximately 1:30 a.m., Saturday, September 24, 1988, Espinoza and appellant encountered Keenan outside appellant's apartment.  Keenan asked the two men to help him locate Lewis so that he could recover some drugs that he claimed Lewis had stolen from him.  Appellant and Espinoza entered appellant's apartment, where they armed themselves, respectively, with a knife and baseball bat.  They then returned to Keenan's truck to assist with the search for Lewis.

{¶ 5} While driving around the Coventry and Murray Hill areas looking for Lewis, Keenan, Espinoza and appellant observed the victim walking beside the road on which they were traveling and called out to him.  The victim approached the vehicle and Keenan forced him into the back seat next to appellant.  The victim was asked where Lewis was, but the victim said he did not know.  While the three men interrogated Klann, Espinoza struck the victim on the head with a baseball bat. Klann ultimately informed his captors where Lewis lived, and Keenan then drove the group to the designated location.  While Keenan and Espinoza attempted to locate Lewis inside an apartment building, appellant remained in the truck, where he held the victim at knife-point.  Keenan and Espinoza failed to locate Lewis, so they returned to the truck and drove off.

---

1.  A more complete recitation of the facts is presented in *D'Ambrosio I.*

**{¶ 6}** Keenan drove the group to Doan's Creek, pulled his truck off the road near the bank of the creek, and forced the victim out of the vehicle. Keenan repeatedly asked Klann where Lewis was, but the victim denied having any knowledge of Lewis' location. Keenan ordered the victim to put his head back, at which point Keenan took appellant's large knife, cut the victim's throat, and pushed him into the creek. The victim stood up and began to run. Keenan then stated, "[f]inish him off." In response, appellant grabbed the knife from Keenan and pursued Klann on foot. Appellant caught Klann, and despite the latter's plea, "[p]lease don't kill me," appellant fatally stabbed Klann several times.

**{¶ 7}** On remand, the court of appeals concluded that the aggravating circumstance in each count outweighed the mitigation evidence and reaffirmed the sentence of death. The appellate court further determined that the sentence of death was not disproportionate to the penalty imposed in similar cases.

**{¶ 8}** The cause is now before this court upon an appeal as of right.

––––––––––––––––––

*Stephanie Tubbs Jones,* Cuyahoga County Prosecuting Attorney, and *Carmen M. Marino*, Assistant Prosecuting Attorney, for appellee.

*John Ghazoul*, for appellant.

––––––––––––––––––

**ALICE ROBIE RESNICK, J.**

**{¶ 9}** Having previously considered appellant's conviction and the issues raised on appeal in *D'Ambrosio I*, this court must now complete the review required by R.C. 2929.05(A) by independently weighing the aggravating circumstance against the mitigating factors, and determining whether the death sentence is appropriate.

A

**{¶ 10}** We note at the outset that appellant seeks to raise several additional issues unrelated to our independent review. In his brief to this court, appellant sets

forth seven propositions of law. All of the asserted arguments, with the exception of Proposition Nos. I(B), IV, VII(A) and VII(B), address issues that were previously advanced in *D'Ambrosio I*. The doctrine of *res judicata* establishes that "a final judgment of conviction bars the convicted defendant from raising and litigating in any proceeding, except an appeal *from that judgment*, any defense or any claimed lack of due process that was raised or could have been raised by the defendant at the trial which resulted in that judgment of conviction or on an appeal from that judgment." (Emphasis added.) *State v. Perry* (1967), 10 Ohio St.2d 175, 180, 39 O.O.2d 189, 192, 226 N.E.2d 104, 108. See, also, *Ashe v. Swenson* (1970), 397 U.S. 436, 442, 90 S.Ct. 1189, 1194, 25 L.Ed.2d 469, 475. This court affirmed appellant's convictions of aggravated murder, kidnapping and aggravated burglary in *D'Ambrosio I*. The fact that the case was remanded to the court of appeals for re-evaluation of the death sentence in no way implicated the finality of those convictions. As such, we reject without further consideration each of appellant's propositions of law, excluding Propositions Nos. I(B), IV, VII(A) and VII(B).

{¶ 11} In Proposition No. IV, appellant attacks the trial court's sentencing opinion. He argues that the opinion is too "conclusory." This argument was asserted in and rejected by the court of appeals in the original appeal, but appellant chose not to pursue it before this court in *D'Ambrosio I*. Appellant's failure to assert this argument in *D'Ambrosio I* constitutes a waiver of any claimed error at this late date. Where an argument could have been raised on an initial appeal, *res judicata* dictates that it is inappropriate to consider that same argument on a second appeal following remand. See *State v. Perry, supra*. See, also, *State v. Sneed* (1992), 63 Ohio St.3d 3, 10, 584 N.E.2d 1160, 1167; *State v. Greer* (1988), 39 Ohio St.3d 236, 247, 530 N.E.2d 382, 396. We accordingly reject appellant's fourth proposition of law.

{¶ 12} Proposition No. VII(B) was similarly raised in the initial appeal to the court of appeals but not in *D'Ambrosio I*. In this proposition, appellant attacks

a provision of his kidnapping sentence as violating Crim. R. 43(A), which requires that all trial proceedings, including sentencing, take place in the defendant's presence. The trial court originally sentenced appellant in open court to "10 to 25 years on the aggravated burglary charge and 10 to 25 years on the kidnapping charge, and sentence to run consecutively." Thereafter, the sentencing opinion issued by the court added that appellant's ten-year minimum term for each conviction was "to be a term of actual incarceration ***." Appellant's decision not to pursue this issue in *D'Ambrosio I* constitutes a waiver as discussed above, and thus precludes him from raising it at this time unless the claimed error rises to the level of plain error. "Notice of plain error under Crim. R. 52(B) is to be taken with the utmost caution, under exceptional circumstances, and only to prevent a manifest miscarriage of justice." *State v. Long* (1978), 53 Ohio St.2d 91, 7 O.O.3d 178, 372 N.E.2d 804, paragraph three of the syllabus. "Plain error does not exist unless it can be said that but for the error, the outcome of the trial would clearly have been otherwise." *State v. Moreland* (1990), 50 Ohio St.3d 58, 62, 552 N.E.2d 894, 899. We find the sentencing modification does not rise to the level of plain error, and therefore reject Proposition No. VII(B) as waived.

{¶ 13} Propositions No. I(B) and VII(A) each challenge the lower court's imposition of the death penalty in light of the evidence appellant offered in mitigation. It is well settled that any errors that a trial court may have committed when weighing the aggravating circumstance against the mitigating factors may be rectified by this court's independent review. *State v. Lott* (1990), 51 Ohio St.3d 160, 170, 555 N.E.2d 293, 304. We address this issue further in Part B of our opinion, infra.

B

**{¶ 14}** We now turn to an independent review of the record as required by R.C. 2929.05(A). The three-judge panel convicted appellant of two counts of aggravated murder, but since each involved the same victim, the two counts merged. See *State v. Huertas* (1990), 51 Ohio St.3d 22, 28, 553 N.E.2d 1058, 1068. With respect to the aggravating circumstance of the murder, the evidence established beyond a reasonable doubt that the murder of Anthony Klann occurred while appellant committed the offense of kidnapping (R.C. 2929.04[A][7]).

**{¶ 15}** Against the sole aggravating circumstance, appellant urges this court to recognize a variety of mitigating factors. Before discussing those factors, however, we note that the record contains the three previously missing mitigation exhibits: appellant's high school record, a presentence investigation report, and a psychiatric report with addendum.

**{¶ 16}** The facts surrounding the offense indicate that Klann was viciously murdered after being forced into a vehicle, repeatedly threatened, held at knife-point, and beaten. As such, we find that the nature and circumstances of the murder are not mitigating.

**{¶ 17}** Nothing in the record suggests that Klann induced or facilitated the commission of his murder, thereby rendering R. C. 2929.04(B)(1) inapplicable in this case. Defense counsel suggested that appellant participated in Klann's murder because appellant was afraid of Keenan. Under this theory, appellant's fear caused him to follow Keenan's instruction to "finish [Klann] off." R.C. 2929.04(B)(2) designates as a mitigating factor "[w]hether it is unlikely that the offense would have been committed, but for the fact that the offender was under duress, coercion, or strong provocation ***." The record fails to support a claim of duress or coercion in this case. The knife Keenan used to slash Klann's throat was provided by appellant. Not one witness testified that Keenan had threatened appellant or had

exerted pressure on him to harm Klann. Appellant's acts were a result of his own free will and, thus, R.C. 2929.04(B)(2) does not apply.

{¶ 18} The evidence does indicate that at the time Klann was murdered, appellant was intoxicated. Appellant testified that by the early morning hours of September 24, 1988, he was "pretty drunk," as a result of having consumed eight or nine beers and four or five shots of tequila. Other witnesses confirmed that appellant was drunk during the time in question. In certain circumstances, voluntary intoxication can constitute a mitigating factor, albeit a weak one. *State v. Lawson* (1992), 64 Ohio St.3d 336, 352, 595 N.E.2d 902, 914; *State v. Hicks* (1989), 43 Ohio St.3d 72, 80, 538 N.E.2d 1030, 1039. But, see, *State v. Slagle* (1992), 65 Ohio St.3d 597, 614, 605 N.E.2d 916, 931 (alcoholism, addiction and voluntary intoxication are not mitigating factors). Appellant attempts to argue very generally that he has a drinking problem, but none of the evidence presented indicates that he suffers from alcoholism. Although he had a history of binges and occasional blackouts while in the Army, appellant adduced no medical diagnosis of alcoholism, despite examination by two psychiatrists who were aware of his drinking patterns. Furthermore, neither of the psychiatrists found any evidence of a mental disease, defect or disorder. We, therefore, assign appellant's intoxication little or no weight under either R.C.2929.04(B)(3) (diminished capacity due to mental disease or defect) or 2929.04(B)(7) (any other relevant factor).

{¶ 19} As to appellant's youth, a potential mitigating factor under R.C. 2929.04(B)(4), he was twenty-six years old at the time of the murder. This court has held on several occasions that where a defendant kills at the age of eighteen or nineteen, the element of youth is entitled to little weight. See *State v. Slagle*, 65 Ohio St.3d at 613, 605 N.E.2d at 931; *State v. Hill* (1992), 64 Ohio St.3d 313, 335, 595 N.E.2d 884, 901; *State v. Powell* (1990), 49 Ohio St.3d 255, 264, 552 N.E.2d 191, 201. Defendant's age of twenty-six clearly negates R.C. 2929.04(B)(4).

**{¶ 20}** Appellant also introduced evidence at trial that prior to the instant offense, his only previous criminal convictions were two convictions for driving under the influence. This fact is entitled to some weight, given the terms of R.C. 2929.04(B)(5).

**{¶ 21}** Appellant urges this court to conclude that he participated in the events leading up to Klann's death as a follower, not as an instigator, and thus R.C. 2929.04(B)(6) applies. The record does demonstrate that it was Keenan who initially commenced the search for Lewis and forced Klann into the truck. While appellant, Keenan and Espinoza each interrogated Klann, it was Espinoza who struck the victim with a baseball bat. Appellant did, however, confine Klann in the truck by holding a large knife within inches of his face. It was also appellant who, after Keenan cut Klann's throat, voluntarily took the knife from Keenan, chased after the victim, and ultimately inflicted several fatal stab wounds on the victim's chest, left wrist and right arm. Appellant clearly acted as a principal offender. The potential mitigation factor in R.C. 2929.04(B)(6), therefore, is not present. See *State v. Landrum* (1990), 53 Ohio St.3d 107, 125, 559 N.E.2d 710, 730.

**{¶ 22}** Appellant further offered evidence of his military and work records as mitigating factors under R.C. 2929.04(D)(7). Appellant enlisted in the Army in 1981 and served until 1985, when he was honorably discharged. While in the Army, appellant graduated early from his training course, reached the grade of E-5 (sergeant) in less than three years, earned the Good Conduct and Army Achievement medals, and obtained a commendation for providing "outstanding maintenance support" to his brigade during a field exercise. Appellant also qualified as an expert with the M-16 and other firearms. The Army offered to promote appellant if he re-enlisted at the conclusion of his initial term, but he declined. Following his discharge from the Army, appellant was unable to secure employment as a mechanic, given his lack of certification. He could not afford the schooling necessary to achieve the required certification. As a result, appellant

accepted a job as a gas station attendant, later becoming the station's night manager. Appellant next worked at Formall Rubber Co., but was fired after six weeks for "terrible absenteeism and tardiness." Then, approximately one month before the murder, appellant accepted a position with Keenan's landscaping business. We find that both appellant's military record and employment history are entitled to some weight as mitigating factors.

{¶ 23} During the mitigation hearing, appellant introduced five witnesses—his mother and four friends—to testify concerning his history, character and background. These witnesses depicted appellant as a nonviolent person and a "peacemaker." They further described appellant as truthful, polite, respectful, caring and responsible. One witness called him "eager *** motivated [and] bright," although appellant's high school record reflects a low grade-point average (1.441) and excessive absenteeism and tardiness. All five witnesses shared the belief that appellant could be rehabilitated.

{¶ 24} Appellant made an unsworn statement to the three-judge panel in which he detailed his life, military career, job situations and his limited involvement with the law. While he acknowledged that the death of Klann was a tragic event, appellant denied any involvement with the killing, thereby raising the issue of residual doubt. Based upon the evidence established at trial, however, we have no doubt of appellant's guilt.

{¶ 25} Edward Espinoza, an eyewitness to the murder, testified against appellant pursuant to the terms of the former's plea bargain. While Espinoza's credibility was challenged during his testimony, the three-judge panel found his statements to be credible as to the course of events. The weight to be given evidence and the credibility of witnesses are issues for the trier of fact to resolve, not an appellate court. *State v. Waddy* (1992), 63 Ohio St.3d 424, 430, 588 N.E.2d 819, 825. See, also, *State v. DeHass* (1967), 10 Ohio St.2d 230, 39 O.O.2d 366, 227 N.E.2d 212, paragraph one of the syllabus. We have no reason to reject the panel's

conclusion in this case, particularly in light of appellant's own questionable credibility. According to appellant, no one—not Keenan, Espinoza or himself—had a weapon on the night that Klann was killed. The denial covered the possession of both knives and baseball bats. Three witnesses, other than Espinoza, testified that they had observed appellant with a knife, and two of those witnesses had observed Espinoza with a bat. On the whole, the evidence of guilt is convincing, and residual doubt is not an important mitigating factor in this case.

{¶ 26} Having weighed the aggravating circumstance against the evidence presented in mitigation, we find that the aggravating circumstance outweighs the mitigating factors beyond a reasonable doubt.

C

{¶ 27} In order to complete our review under R.C. 2929.05(A), we must consider whether the sentence of death imposed in this case is excessive or disproportionate to the penalty imposed in similar cases. This court has approved the death penalty in several cases where the sole aggravating circumstance was kidnapping. See, *e.g., State v. Morales* (1987), 32 Ohio St.3d 252, 513 N.E.2d 267; *State v. Buell* (1986), 22 Ohio St.3d 124, 22 OBR 203, 489 N.E.2d 795; *State v. Mauer* (1984), 15 Ohio St.3d 239, 15 OBR 379, 473 N.E.2d 768.

{¶ 28} Perhaps the most significant cases for us to consider relative to our proportionality review in the instant action are *State v. Brewer* (1990), 48 Ohio St.3d 50, 549 N.E.2d 491, and *State v. Fox* (1994), 69 Ohio St.3d 183, 631 N.E.2d 124. In those cases, the defendants introduced mitigation evidence comparable to, but even greater than, D'Ambrosio's. Like the appellant in this case, Brewer and Fox had clean records, histories of legitimate and gainful employment, and several favorable character witnesses. Unlike D'Ambrosio, however, both Brewer and Fox demonstrated mental problems and expressed remorse. See *Brewer*, 48 Ohio St.3d at 54, 549 N.E.2d at 496; *Fox*, 69 Ohio St.3d at 194-195, 631 N.E.2d at 133. Fox also showed a "relatively successful adjustment to pretrial confinement ***." *Id.*

at 194, 631 N.E.2d at 133. Yet, in both of those cases, the aggravating circumstance of murder being committed during the course of a kidnapping outweighed the evidence offered in mitigation. We therefore find the sentence of death to be neither excessive nor disproportionate in this case.

{¶ 29} Based upon the foregoing, the judgment of the court of appeals upholding the sentence of death is affirmed.

*Judgment affirmed.*

MOYER, C.J., DOUGLAS, WOLFF and COOK, JJ., concur.

WRIGHT and PFEIFER, JJ., dissent.

WILLIAM H. WOLFF, JR., J., of the Second Appellate District, sitting for F.E. SWEENEY, J.

_____

**WRIGHT, J., DISSENTING.**

{¶ 30} This court, both by words and by actions, has adopted the position that the sentence of death is a very different kind of penalty from any other that our state may impose. During the past ten and one-half years, I have had the ofttimes trying duty of reviewing more than six-score capital cases. I must say that only two or three of these cases involved persons whom society would have any interest in rehabilitating. Joseph D'Ambrosio, the appellant in this case, is an exception to the general rule just stated.

{¶ 31} During the mitigation stage of the proceedings, appellant presented a substantial amount of testimony supporting the idea that he is perfectly capable of making an honest living, acting responsibly, and contributing to society after serving a twenty- or thirty-year sentence. The circumstances of this case indicate that this murder was much out of appellant's character. D'Ambrosio's responsibility was *limited* by his subordinate role and the fact that he was under the influence of alcohol at the time of the crime. Voluntary intoxication may be a mitigating factor if it either lessens the moral culpability of a defendant for an offense or renders the

death sentence less appropriate in a given case. See *State v. Sowell* (1988), 39 Ohio St.3d 322, 325, 530 N.E.2d 1294, 1300.

{¶ 32} Furthermore, D'Ambrosio has an excellent military record. He served in the United States Army from 1981 through 1985, graduated early from his training course and reached the grade of E-5 (sergeant) in less than three years. D'Ambrosio earned the Good Conduct and Army Achievement medals and a commendation for providing "outstanding maintenance" to his brigade during a field exercise. Upon declining the army's offer to promote him if he reenlisted, D'Ambrosio received an honorable discharge. After his discharge he had difficulty finding high-skilled work, but did remain gainfully employed through most of the period from the time of his discharge to the time of his arrest in September 1988. Aside from two DWIs, D'Ambrosio has no significant prior criminal convictions and delinquency adjudications. D'Ambrosio participated in this crime as a follower, not as an instigator. I believe beyond any question that the aggravating circumstance does not outweigh the mitigating factors beyond a reasonable doubt. In point of fact, the mitigating factors are sufficient to outweigh the aggravating circumstance.

{¶ 33} Accordingly, I would reverse the death sentence and remand this cause to the trial court for further proceedings pursuant to *State v. Penix* (1987), 32 Ohio St.3d 369, 513 N.E.2d 744.

PFEIFER, J., concurs in the foregoing dissenting opinion.

_____