OPINION
This appeal is brought by Defendant-Appellant, Elmore Calvin, Jr., from a judgment of the Court of Common Pleas of Marion County entered pursuant to a jury verdict of guilty on one count of possession of cocaine with an accompanying firearm specification. Because we find that none of the arguments advanced on appeal requires a reversal, we affirm the judgment of the trial court.
In late July of 1998, Appellant; Robert Lee Smith, Jr.; and Charles Jerome Howard, all residents of Detroit, Michigan, arrived at 775 Gill Avenue, Marion County, Ohio, a one-bedroom apartment where known crack addict, Denzil Blanton, had been residing at the time. The three men apparently provided Blanton with crack and cigarettes in exchange for the opportunity to stay in his home. Blanton testified that during that time, he witnessed the three men process powder cocaine into crack in the apartment and then sell the drugs to several different people, including Blanton's brother.
On August 3, 1998, approximately one week after the three men began residing at Blanton's apartment, detectives with the local MARMET Drug Task Force received a tip that crack was being sold from Blanton's apartment, and that various wanted individuals were inside (Tommy Cantrell, Christina Belcher, and Denzil's brother, Danny Blanton). As a result of the tip, three plain-clothesed detectives and two uniformed officers arrived at the residence at about 3:30 p.m. Detective Steve Ross knocked on the door, announcing that the police were outside. The evidence reveals that it took anywhere from three to fifteen minutes before Blanton responded.
Thereafter, Blanton opened the door and quickly gave the officers permission to search his upstairs apartment. He informed them that a couple of his friends from Chicago would be in the residence; however, when the officers reached Blanton's apartment, nobody was apparently there. Upon a more thorough search of the residence, Detective Ross found Robert Smith hiding in a small bathroom closet. In response to the officer's questions, Smith indicated that no one else was in the apartment.
In spite of Smith's statement, Blanton began "eyeing" an access panel to the attic, silently indicating to the officers that more people were present. After breaking the dry wall around the panel, Ross hoisted himself up into the attic, which was described as hot, dark, and extremely dirty. Ross immediately spotted Jerome Howard and ordered him to come down. The detective then found Appellant laying flat on his back with his arms at his sides. A large wad of cash was located right near Appellant's leg. Additionally, a white plastic bag containing a small amount of marijuana and several grams of powder cocaine was located just inches from Appellant's head.
A further search of the apartment uncovered other incriminating items such as scales, razor blades, and two bottles of Inositol, a substance commonly used as a cocaine cutting agent. Two firearms were also located in the water tank of the toilet.
As a result of these events, the Marion County Grand Jury issued a joint indictment charging Appellant, Smith and Howard with one count each of possession of cocaine and trafficking in cocaine. A subsequent indictment charged Appellant with a firearm specification on both counts.
Appellant pled not guilty, and the case was eventually tried to a jury in December 1999. After hearing all of the evidence, the jury returned a guilty verdict on the possession charge and the accompanying firearm specification. The jury found Appellant not guilty of trafficking cocaine. The court entered judgment accordingly and delayed sentencing to allow for the preparation of a presentence investigation report. Thereafter, a January 26, 2000 judgment entry on sentencing ordered Appellant to serve consecutive terms of four years on the possession charge, and one year on the firearm specification. This timely appeal followed.
 Assignment of Error I Defendant's conviction for possession of cocaine was not supported by sufficient evidence and was, in fact, against the manifest weight of the evidence.
We begin our discussion by noting that the Supreme Court of Ohio has held that "[t]he legal concepts of sufficiency of the evidence and weight of the evidence are both quantitatively and qualitatively different." State v. Thompkins (1997), 78 Ohio St.3d 380, paragraph two of the syllabus. With respect to the argument that the evidence adduced at trial was insufficient to sustain a conviction on the possession charge, we point out that Appellant failed to make a timely Crim.R. 29 motion for acquittal at trial. This failure constitutes a waiver of a sufficiency argument on appeal. See State v. Roe (1989),41 Ohio St.3d 18, 25. Consequently, we must move on to address the argument that Appellant's conviction was against the manifest weight of the evidence.
In reviewing this type of claim, the duty of the appellate court is to "* * * [review] the entire record, [weigh] the evidence and all reasonable inferences, [consider] the credibility of witnesses and [determine] whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." Thompkins, supra,78 Ohio St.3d at 387, quoting State v. Martin (1983), 20 Ohio App.3d 172, 175. Courts are cautioned to reverse a conviction based upon a manifest weight argument "only in the exceptional case in which the evidence weighs heavily against the conviction." Id. This is not such a case.
The evidence herein reveals that the white plastic bag was in Blanton's apartment during the time that the three co-defendants were staying there, and that Appellant retrieved powder cocaine from the bag on various occasions. In fact, Blanton testified that Appellant had the bag in his hand at the time the police initially arrived at the apartment on August 3, 1998. A short time later, the authorities found Appellant hiding in a dark, dusty attic with the same bag containing more than fifty grams of cocaine within inches of his body. Although Appellant argues that he did not know the drugs were present in the attic and that he was hiding only out of fear of being wounded by the officers' weapons, we cannot say that the jury clearly lost its way in rejecting this alternate theory.
Appellant's first assignment of error is overruled.
 Assignment of Error II The trial court erred in permitting the State to introduce irrelevant evidence into trial to the prejudice of the Defendant and to engage in improper closing remarks.
Appellant makes two separate arguments under this assignment of error. He first asserts that the evidence regarding the guns found in the toilet tank was introduced in violation of the Ohio Rules of Evidence because it was irrelevant and highly prejudicial. Evid.R. 401 defines "relevant evidence" as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Evid.R. 403 further provides that although evidence may be considered relevant, it must be excluded from trial if the "probative value is substantially outweighed by the danger of unfair prejudice * * *."
Despite Appellant's argument to the contrary, we find that Blanton's unrefuted testimony that he witnessed Appellant receive the firearm as payment for crack, and the officers' statements about the recovery of the gun were certainly relevant to the determination of whether the firearm was on or about the Appellant's person or under his control at the time of the charged offenses. We also find that that the probative value of this evidence was not substantially outweighed by the danger of unfair prejudice. Thus, we reject Appellant's evidentiary argument.
With that stated, we move on to address Appellant's claim that he was prejudiced by the prosecutor's improper statements made during closing argument. The standard for prosecutorial misconduct in closing arguments has been set forth as follows:
 The test regarding prosecutorial misconduct in closing arguments is whether the remarks were improper and, if so, whether they prejudicially affected substantial rights of the defendant * * *. In making this determination, an appellate court should consider several factors: (1) the nature of the remarks, (2) whether an objection was made by counsel, (3) whether corrective instructions were given by the court, and (4) the strength of the evidence against the defendant.
 State v. Braxton (1995), 102 Ohio App.3d 28, 41 (citations omitted). Moreover, the closing argument must be viewed in its entirety to determine whether it was prejudicial. State v.Moritz (1980), 63 Ohio St.2d 150, 157.
In the present case, Appellant argues that the first instance of misconduct occurred when the prosecutor made the following remark to the jury during closing argument:
 * * * [T]he question becomes what in the world are three guys from Detroit doing coming to Marion hanging out with Denzil? And the point is is that there is no innocent explanation as to three guys from Detroit coming to hang out with Denzil at 775, selling drugs — .
Appellant specifically maintains that this comment allowed the jury to infer that he had a duty to testify and provide an explanation as to why the three men from Detroit came to live in his apartment. We acknowledge the well-established rule that a prosecutor may not comment on a defendant's failure to testify. See State v. Clemons (1998), 82 Ohio St.3d 438, 452;State v. Thompson (1987), 33 Ohio St.3d 1, 4. However, we do not believe that this general comment could be deemed an improper remark about Appellant's decision not to take the witness stand.
Assuming that this could be construed as such a comment, the issue for the reviewing court then becomes "whether the language used was manifestly intended or was of such character that the jury would naturally and necessarily take it to be a comment on the failure of the accused to testify." State v. Webb (1994),70 Ohio St.3d 325, 328. We conclude that state's comment was neither "manifestly intended" nor of such nature that the jury would "naturally and necessarily" take it to be a remark on Appellant's decision not to testify.
The next alleged instance of misconduct occurred during the rebuttal argument when the prosecutor responded to defense counsel's comment about the state's failure to produce any other witnesses who apparently purchased crack from Appellant:
 But further, Mr. Zeigler wants to say, "Well, we could have had Dannie Blanton come in and testify or Scottie Bowmer come in and testify." First of all, it's difficult enough to have somebody rat on somebody else, let alone rat on themselves. Secondly * * *, the subpoena power involved in a criminal case, the State has as well as the defense.
Appellant claims that this comment allowed the jury to infer guilt since Appellant did not call witnesses of his own or otherwise put on a defense. Contrary to Appellant's assertions that this is inappropriate argument, the Supreme Court of Ohio has noted that "[t]he comment that a witness other than the accused did not testify is not improper * * *." Clemons, supra,82 Ohio St.3d at 452; State v. D'Ambrosio (1993), 67 Ohio St.3d 185. This is because the prosecution is permitted to comment upon the defense's failure to offer evidence in support of its own case. Clemons at 452. Therefore, we do not discern the aforementioned comment to be inappropriate.
Appellant's second assignment of error is overruled.
 Assignment of Error III The Defendant was denied effective assistance of counsel when trial counsel failed to move for acquittal.
Ohio law presumes that a properly licensed attorney is competent to practice. State v. Turner (Feb. 27, 1997), Allen App. No. 1-96-27, unreported, citing State v. Lytle (1976),48 Ohio St.2d 391, 397, vacated on other grounds (1978),438 U.S. 910. In order to determine whether an accused was deprived of the effective assistance of counsel, we must apply a two-part analysis. We must first decide whether the attorney's performance fell below an objective standard of reasonableness. If so, we must then determine whether a reasonable probability exists that the outcome of the trial would have been otherwise but for the attorney's unprofessional mistakes. See State v.Bradley (1989), 42 Ohio St.3d 136, syllabus; Strickland v.Washington (1984), 466 U.S. 668, 690.
Appellant complains that his trial attorney was ineffective because of the failure to make a timely motion for acquittal pursuant to Crim.R. 29. Standing alone, this conduct does not constitute ineffective assistance of counsel. See generally,Turner, supra, at * * 3; State v. Fields (1995), 102 Ohio App.3d 284,287. While it may be argued that counsel's failure to make such a motion is a violation of an essential duty owed to the client, it will be deemed ineffective only if the accused can demonstrate resulting prejudice. Turner, at * * 3. Accordingly, we must determine whether Appellant can establish that the motion for acquittal would have been granted in the absence of counsel's error. In doing so, we must apply the standard set forth in Statev. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus:
 * * * The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.
With regard to the instant drug charge, the State of Ohio was required to prove that Appellant knowingly possessed a controlled substance, namely cocaine. R.C. 2925.11(A) and (C)(4). The term "possession" means "having control over a thing or substance, but may not be inferred solely from mere access to the thing or substance through ownership or occupation of the premises upon which the thing or substance is found." See R.C. 2925.01(K). Possession may be actual or constructive. State v. Scalf (1998), 126 Ohio App.3d 614, 619;State v. Haynes (1971), 25 Ohio St.2d 264. "Constructive possession will be established where the accused was able to exercise dominion or control over the contraband." Scalf,126 Ohio App.3d at 619.
Again, the evidence demonstrates that Appellant exercised unfettered access to a white plastic bag during the time he lived at Blanton's apartment, and that he would retrieve powder cocaine from inside the bag at various times. Indeed, Blanton stated that Appellant had the bag in his hands just prior to the police entering the residence. The authorities then found Appellant hiding in a dark, cramped attic with the same bag and a wad of cash in very close proximity to his body. The bag was later determined to contain approximately 58 grams of powder cocaine. Admittedly, much of this evidence originated from Blanton himself, a known crack addict. However, the credibility of a witness' testimony is to be decided by the jury. State v. D'Ambrosio
(1995), 73 Ohio St.3d 141, 147. Thus, with the evidence presented at trial, we believe that any rational finder of fact could have concluded that the State of Ohio proved the essential elements of possession of cocaine beyond a reasonable doubt.
Similarly, we find that any rational trier of fact could have concluded that Appellant violated R.C. 2941.141 by having a firearm on or about his person or under his control at the time that he possessed the cocaine. Blanton testified that he witnessed a buyer hand Appellant a small pistol in exchange for some crack. Blanton then stated that he saw Appellant walk around the apartment with the gun stuck in the front of his pants. The same firearm was later located by police in the tank of Blanton's toilet. Upon further inspection, police discovered that the gun was fully operable. This evidence, coupled with Blanton's testimony about the white plastic bag, leads us to conclude that the jury could have found that Appellant had the pistol on or about his person or under his control at the time that he possessed the powder cocaine. Therefore, we find that the motion for acquittal would not have been granted had defense counsel requested it. While it may be argued that the failure to make a timely motion for acquittal is conduct that falls below an objective standard of reasonableness, we believe that counsel's failure to do so did not result in any prejudice, and thus, cannot be considered ineffective.
Based upon the foregoing discussion Appellant's third assignment of error is overruled.
Having found no error prejudicial to the Appellant herein, in the particulars assigned and argued, the judgment of the trial court is hereby affirmed.
 ___________________________ WALTERS, J.
SHAW and BRYANT, JJ., concur.