[Cite as *In re C.M.*, 2025-Ohio-1738.]

# COURT OF APPEALS OF OHIO

# EIGHTH APPELLATE DISTRICT
# COUNTY OF CUYAHOGA

IN RE C.M., ET AL.         :

                        :         No. 114416

[Appeal by G.M., Father]     :

## JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** May 15, 2025

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Juvenile Division
Case Nos. AD23904983 and AD23904984

### *Appearances:*

G.M., *pro se.*

Michael C. O'Malley, Cuyahoga County Prosecuting
Attorney, and Joseph C. Young, Assistant Prosecuting
Attorney, *for appellee* CCDCFS.

MARY J. BOYLE, J.:

{¶ 1} In this companion appeal, appellant G.M. ("Father"), pro se, appeals from the judgments of the Cuyahoga County Court of Common Pleas, Juvenile Division ("juvenile court"), that found his minor children, A.M. and C.M., to be dependent.[1] For the reasons set forth, we affirm the juvenile court's judgments.

---

[1] This appeal is a companion to Mother's appeal in *In re A.M.,* 8th Dist. Cuyahoga No. 114418. We only address Father's appeal herein.

## I. Facts and Procedural History

{¶ 2} In April 2023, appellee Cuyahoga County Division of Children and Family Services ("CCDCFS" or the "agency") filed a complaint in three separate cases alleging that Father and Mother's children A.M., C.M., and M.M. were neglected and dependent.[2] With regard to Father, CCDCFS alleged that he "lacks appropriate decision-making and parenting skills to provide appropriate care for the children." (Complaint, Apr. 2023.) CCDCFS sought a disposition of temporary custody to the agency. After the conclusion of several hearings, the magistrate issued decisions finding that a danger to C.M. and A.M. existed, A.M. and C.M. were dependent under R.C. 2151.04(C), and pursuant to CCDCFS's amended dispositional request from temporary custody to protective supervision, recommended that the children be placed under the protective supervision of the agency. The magistrate dismissed the complaint regarding M.M. Father filed objections to the magistrate's decision, which were overruled by the juvenile court. In November 2023, the court adopted the magistrate's decisions adjudicating C.M. and A.M. to be dependent under R.C. 2151.04(C) and ordering them placed under the protective supervision of CCDCFS. Mother and Father filed separate notices of appeal from the juvenile

---

[2] Because the filings in the cases are nearly identical, citations to the record will be to Cuy. J.C. No. AD23904983, unless a more specific citation is warranted.

court's judgments. This court consolidated the appeals for hearing and disposition in *In re C.M.*, 2024-Ohio-2713 (8th Dist.).[3]

{¶ 3} In the consolidated appeal, Father contended that the court's dependency findings were not supported by the weight of the evidence. *Id*. at ¶ 3. Father further contended that the juvenile court's journal entries failed to comply with the requirements of R.C. 2151.28(L). *Id.* This court found that we were unable to review Father's arguments regarding the court's dependency determinations because the trial court's journal entries did not comply with the requirements of R.C. 2151.28(L). As a result, we "revers[ed] the trial court's judgments to the extent they found [A.M. and C.M.] to be dependent and remand[ed] for the court to issue judgment entries incorporating written findings of fact and conclusions of law in compliance with R.C. 2151.28(L)." *Id*. at ¶ 1.

{¶ 4} Following our remand, a magistrate's decision was issued that included the required statutory findings of fact and conclusions of law as required by R.C. 2151.28(L). Father filed objections to the magistrate's decision, which the juvenile court overruled. In September 2024, the juvenile court issued a judgment entry adopting the magistrate's decision. The court's entry included findings of fact and conclusions of law, determined by clear and convincing evidence that A.M. and C.M. are dependent under R.C. 2151.04(C), adjudicated both A.M. and C.M. to be

---

[3] Neither Mother nor Father challenged the dismissal of the complaint relative to M.M., and the child was not a party to the appeal.

dependent, and adopted the court's earlier orders placing the children under the protective supervision of CCDCFS.

{¶ 5} Father appeals again, this time raising the following four assignments of error for review:

> **Assignment of Error I:** The juvenile court committed plain error when it did not obey the constitutional mandates of the Fourth Amendment to the United States Constitution, when it failed to dismiss the complaint against Father, where probable cause did not exist that Father's children, [A.M., C.M., and M.M.] were neglected and dependent on April 8th, 2023.
>
> **Assignment of Error II:** The juvenile court committed plain error when it did not obey the mandates of [R.C. 2151.27(A)], in providing a factual basis in support of it jurisdiction, the juvenile court committed plain error when it did not obey the mandates of [Juv.R. 10(B)(1)], which indicates that a complaint shall state in ordinary and concise language the essential facts that bring the proceeding within the jurisdiction of the court.
>
> **Assignment of Error III:** The juvenile court committed plain error when it adjudicated Father's children dependent under [R.C. 2151.04(C)], notwithstanding, the determination as to whether a child is dependent must be as to the date of the complaint, not the date of the adjudicatory hearing.
>
> **Assignment of Error IV:** The juvenile court committed plain error when it failed to dismiss the complaint against Father, where Father was at home with his two sons A.M. and M.M. at the time the incident occurred at Mother's home and had [no] knowledge of the incident until sometime after it had occurred.

## II. Law and Analysis

### A. Res Judicata

{¶ 6} In Father's first, second, and fourth assignments of error, Father argues that the juvenile court: (1) committed plain error by failing to dismiss the complaint for lack of probable cause "because the complaint lacked credible

evidence and failed to specify the facts, putting Father on notice that he would be required to defend against any allegations"; (2) failed to demonstrate that it had jurisdiction and that the complaint failed to comply with the requirements of R.C. 2151.27(A) and Juv.R. 10(B)(1); and (3) committed plain error by failing to dismiss the complaint where Father claimed to have no knowledge of the children's condition in their Mother's home on April 8, 2023, which formed the basis of CCDCFS's complaint.[4] (Father's brief, p. 8.) CCDCFS argues that these claims are barred by res judicata because Father could have raised these arguments in his direct appeal, but failed to do so. We agree.

{¶ 7} Under the doctrine of res judicata, "a valid, final judgment bars all subsequent actions based on any claim arising out of the transaction or occurrence that was the subject matter of the prior action." *Grava v. Parkman Twp.*, 73 Ohio St.3d 379, 382 (1995). The Ohio Supreme Court has explained that "[w]here an argument could have been raised on an initial appeal, *res judicata* dictates that it is inappropriate to consider that same argument on a second appeal following remand." (Emphasis in original.) *State v. D'Ambrosio*, 73 Ohio St.3d 141, 143

---

[4] Within his first and second assignments of error, Father also argues that the juvenile court failed to establish subject-matter jurisdiction. This argument is erroneous. R.C. 2151.23(A)(1) provides that the juvenile court is vested with subject-matter jurisdiction over proceedings involving children alleged to be abused, neglected, or dependent. *See also In re J.J.*, 2006-Ohio-5484, ¶ 11 (where the Ohio Supreme Court stated: "The General Assembly established the jurisdiction of juvenile courts and, in R.C. 2151.23(A)(1), granted them exclusive, original jurisdiction concerning matters involving a neglected or dependent child").

(1995), citing *State v. Perry*, 10 Ohio St.2d 175 (1967); *State v. Sneed*, 63 Ohio St.3d 3 (1992); *State v. Greer*, 39 Ohio St.3d 236 (1988).

{¶ 8} Here, Father filed a motion to dismiss the complaint for lack of probable cause in June 2023. The juvenile court denied the motion in its November 2, 2023 judgment entry, which also adjudicated C.M. and A.M. to be dependent and ordered them placed under the protective supervision of CCDCFS. In its entry, the court noted that "in addition to the multiple days of hearings in the herein matter, the Motion filed by [Father] quotes the allegation in the complaint that pertains directly to him. Thus, [Father] clearly had knowledge of the allegation levied against him." (Judgment entry, Nov. 2, 2023.) Father appealed from this entry on November 30, 2023. Father could have raised these arguments in his first appeal.

{¶ 9} Based on the foregoing, we find that these newly presented arguments are barred by the doctrine of res judicata and could have been raised in Father's initial appeal. Therefore, Father's first, second, and fourth assignments of error are overruled.

{¶ 10} We now turn to Father's remaining assignment of error in which he challenges the juvenile court's dependency adjudication.

**B. Dependency Adjudication**

{¶ 11} In the third assignment of error, Father argues that the court erred when it adjudicated A.M. and C.M. dependent. CCDCFS argues that res judicata applies to this assignment of error as well. We disagree. Father essentially

challenges the juvenile court's adjudication through the manifest-weight-of-the-evidence argument, which is related to his initial appeal and is not barred by res judicata.

{¶ 12} At the outset, we recognize that the right to raise one's own child is "an 'essential' and 'basic civil right.'" *In re Murray*, 52 Ohio St.3d 155, 156 (1990), quoting *Stanley v. Illinois*, 405 U.S. 645, 651 (1972). "Parents have a 'fundamental liberty interest' in the care, custody, and management of the child." *Id.*, quoting *Santosky v. Kramer*, 455 U.S. 745, 753 (1982). This right, however, is not absolute. "'The natural rights of a parent are always subject to the ultimate welfare of the child, which is the polestar or controlling principle to be observed.'" *In re Cunningham*, 59 Ohio St.2d 100, 106 (1979), quoting *In re R.J.C.*, 300 So.2d 54, 58 (Fla.App. 1974).

{¶ 13} In *In re Z.C.*, 2023-Ohio-4703, the Ohio Supreme Court reexplained the manifest-weight-of-the-evidence standard as follows:

> When reviewing for manifest weight, the appellate court must weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether, in resolving conflicts in the evidence, the finder of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed and a new trial ordered. [*Eastley v. Volkman*, 2012-Ohio-2179, ¶ 20.] "In weighing the evidence, the court of appeals must always be mindful of the presumption in favor of the finder of fact." *Id.* at ¶ 21. "The underlying rationale of giving deference to the findings of the trial court rests with the knowledge that the trial judge is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." *Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984). "'If the evidence is susceptible of more than one construction, the reviewing court is bound to give it that

interpretation which is consistent with the verdict and judgment, most favorable to sustaining the verdict and judgment.'" *Id.* at fn. 3, quoting 5 Ohio Jurisprudence 3d, Appellate Review, Section 603, at 191-192 (1978).

*Id.* at ¶ 14.

{¶ 14} In the instant case, the juvenile court found, by clear and convincing evidence, that A.M. and C.M. are dependent under R.C. 2151.04(C) and placed the children under protective supervision of CCDCFS. R.C. 2151.04(C) defines a "dependent child" as any child "[w]hose condition or environment is such as to warrant the state, in the interests of the child, in assuming the child's guardianship[.]" We note that the determination that a child is dependent under R.C. 2151.04(C) "requires no showing of fault, but focuses exclusively on the child's situation to determine whether the child is without proper (or adequate) care or support." *In re Riddle*, 79 Ohio St.3d 259, 262 (1997), citing *In re East*, 32 Ohio Misc. 65 (C.P. 1972). A parent's conduct, however, is relevant under the terms of R.C. 2151.04(C) "solely insofar as that parent's conduct forms a part of the environment of [the] child. As a part of the child's environment such conduct is only significant if it can be demonstrated to have an adverse impact upon the child sufficiently to warrant state intervention." *In re Burrell*, 58 Ohio St.2d 37, 39 (1979). "Protective supervision" is defined as "an order of disposition pursuant to which the court permits a . . . dependent . . . child to remain in the custody of the child's parents . . . and stay in the child's home, subject to any conditions and limitations upon the child, the child's parents . . . or any other person that the court prescribes, including

supervision as directed by the court for the protection of the child." R.C. 2151.011(B)(42).

{¶ 15} A review of the record reveals that the court conducted adjudicatory hearings in this matter on five different dates from July 17, 2023, through August 24, 2023. Following our remand, the juvenile court issued detailed findings of fact in each child's case in which the court stated:

> On or about April 8, 2023, mother was found unresponsive in her home by the child, C.M. The child called 911 to seek assistance for the mother when the child was unable to wake the mother.
>
> As a result of the mother's unresponsiveness, Cleveland police and EMS responded to the mother's home. [An EMS worker] testified that when she responded to mother's house on or about April 8, 2023, mother's house was unsanitary. [Mother] appeared to be under the influence as she was not responsive. [The EMS worker] testified that she did not observe any drugs or paraphernalia. [She] testified that she viewed several bowls of feces in the upstairs of the mother's home and the home was cold. Despite her condition, the mother was able to walk downstairs assisted by the EMS workers.
>
> The mother left the hospital prior to receiving medical care.
>
> Despite the circumstances of April 8, 2023, in which the child was present when the mother was transported to the hospital by EMS, the father was not aware of the situation until he was advised of it by [CCDCFS] on April 12, 2024.
>
> [A.M and C.M.] were previously found to be abused and neglected . . . . Mother's substance abuse was a contributing factor to the finding of abuse and neglect.
>
> [A.M. and C.M.] were in the temporary custody of [CCDCFS] from July 29, 2019 until February 18, 2021 when [the children] were reunited with the mother . . . .
>
> The custody order was modified on March 7, 2023 designating both parents as legal custodian and residential parent of [the children].

The child did not attend school on a consistent basis. Until March 7, 2023, the child was in the mother's legal custody. However, mother did not ensure that the child attended school on a daily basis. When both parents became the legal custodians and residential parents of the child on March 7, 2023, the child attendance did not improve.

[Father] testified that he was unaware of the incident of April 8, 2023 in which [C.M.] called 911 until he was informed of it by CCDCFS.

Throughout the proceedings, [Father] was combative, argumentative, and disruptive of the proceedings. He refused to cooperate with CCDCFS in its efforts to ensure the safety and well-being of the children in his home and in the mother's home. [Mother's] behavior mirrored [Father's] to a lesser extent.

During his testimony on August 14, 2023, [Father] testified that the child was enrolled in school. When questioned by the assistant prosecuting attorney as to which school the child is enrolled in, [Father] refused to answer the question. This Court advised [Father] of the possible consequences of a finding of contempt of court as well as his legal rights. Court was adjourned and reconvened on August 15, 2023.

[Father] testified that the children were enrolled at the Northeast Ohio College Preparatory School for the 202[3]-202[4] school year.

On August 24, 2023, [a CCDCFS Worker] testified that upon verification with [the] Northeast Ohio College Preparatory School the child, C.M. missed 72 hours (approximately 11 days) and the child A.M. was not enrolled in school for the 2022-2023 school year.

. . .

The Court finds by clear and convincing evidence that the child is a dependent child pursuant to [R.C. 2151.04(C)].

(Judgment entry, Sept. 9, 2024.)

{¶ 16} Father argues that the juvenile court erred by finding the children dependent under R.C. 2151.04(C) because the complaint alleged R.C. 2151.04(D) and CCDCFS did not amend the complaint. A review of the record, however, reveals that the juvenile court effectively amended the complaint during its analysis of the

evidence in relation to the allegations raised in the complaint and its pronouncement of its adjudicatory findings. After the commencement of the adjudicatory hearing, Juv.R. 22(B) permits the court to amend any pleading "if the interests of justice require[.]"[5] This is precisely what the court did in the matter before us. The court amended the complaint to reflect what had been proven during the adjudicatory hearing and included the relevant citation to the dependency statute. The court stated, "[T]he Court is going to find first and foremost that the Agency has not proved that the children are neglected and the Court is going to find that children [A.M. and C.M.] are dependent as to [R.C.] 2151.04(C)." (Tr. 433.)

{¶ 17} Although Father is correct that the court must determine the issue of dependency as of the date or dates alleged in the complaint, this does mean that the court is limited to the April 8, 2023 date alleged in the complaint. *See In re C.O.*, 2013-Ohio-5239, ¶ 31 (8th Dist.). The April 8, 2023 date relates to the day Mother was found unresponsive and the condition of her home on that date. The allegation pertaining to Father that he "lacks appropriate decision-making and parenting skills to provide appropriate care for the children" does not include that this condition existed only on April 8, 2023. (Amended Complaint, Aug. 24, 2023.) Therefore, proof of this allegation was not limited to evidence relating solely to April 8, 2023. Furthermore, the evidence demonstrated several factors supporting this allegation, including the fact that Father was unaware of the living conditions in the Mother's

---

[5] Additionally, the complaint may be amended to conform to the evidence at trial under Civ.R. 15(B).

home, the children's prior adjudication due to Mother's substance abuse, Father's behavior during interactions with the agency, and the fact that the children did not attend school on a consistent basis. The testimony in this regard related to facts preceding the filing of the complaint and were appropriately considered by the court in adjudicating the children.

{¶ 18} Turning to juvenile court's dependency adjudication, we find that the court's decisions are not against the manifest weight of the evidence. Father's contentions do not negate the evidence in the record supporting the juvenile court's findings. The evidence demonstrates that Father's conduct had an adverse impact upon the children sufficiently to warrant state intervention. Indeed, there was significant testimony regarding Father's parenting skills and his apparent lack of concern of Mother's potential ongoing substance-abuse concerns with the children, his failure to ensure their attendance at school, and his volatile behaviors as observed in meetings with the agency and in court hearings.[6]

{¶ 19} The testimony revealed that a CCDCFS worker checked with the Cleveland Metropolitan School District Board of Education in an attempt to determine the educational status of the children, but there were no records of the children being enrolled in school. The CCDCFS worker testified the children's attendance at school for the previous school year "was very poor" and the children

---

[6] In 2019, the children were removed from Mother's care due to her substance-abuse problems. The children were adjudicated as neglected and abused and were placed in the agency's care. The children returned to Mother's care in 2021 and were later placed into the joint custody of Mother and Father in March 2023.

"were hardly in school the whole year." (Tr. 445-446.) The children's guardian ad litem ("GAL") testified that A.M. was enrolled in the eighth grade for the 2021-2022 school year and was promoted to the ninth grade at the end of that year, but that there is no record of him attending school at all for the 2022-2023 school year and that he was just entering the ninth grade at the time of hearing in August 2023. As for C.M., she completed the fifth grade in the 2021-2022 school year and was promoted to the sixth grade for the 2022-2023 school year. Although she was enrolled in the school for the 2022-2023 school year, she had "terrible" attendance and chronic absenteeism and was ultimately withdrawn from the school during that year with no evidence of promotion to the next grade level. (Tr. 478.) Specifically, C.M. missed "479 hours of school combining absences and tardies," with 72 absences. (Tr. 478.) The GAL explained that 14 unexcused absences or 92 unexcused hours of absences is considered chronic absenteeism. Based on these educational concerns for the children, the GAL recommended that CCDCFS be involved in monitoring the family to ensure the children's attendance and progress in school.

{¶ 20} During Father's testimony at the August 14 hearing, he refused to answers questions about the children's enrollment in school even after the court ordered him to do so. The matter was continued to the next day for a further adjudicatory hearing and a contempt-of-court proceeding. Father then answered the schooling questions and indicated that C.M. and A.M. were enrolled at Northeast Ohio Preparatory College. In addition, Father indicated that while he was aware of

Mother's substance-abuse history and acknowledged that they coparented the children, he lived separately from Mother so "as far as, you know, watching her for drugs, ma'am, you know, I can't say that I'm really concerned with that right now." (Tr. 315.)

{¶ 21} Tellingly, the GAL stated that he was "compelled to determine what the educational status was of [his] wards. That was met with the utmost defiance by both parents in this case." (Tr. 404.) This resulted in GAL filing a motion to compel against Father in relation to the children's educational records. The GAL was eventually able to obtain some records a week prior to the August 24, 2023 hearing date. The GAL stated, "[T]he fact that the children missed enormous amounts of school or wouldn't come to school at all is relevant to the adjudicatory phase of this case" as it relates to the allegation of poor parental decision-making. (Tr. 361-362.)

{¶ 22} The foregoing facts support the court's dependency findings for C.M. and A.M. We cannot say the court clearly lost its way or created a manifest miscarriage of justice. After careful consideration of the entire record, we find the juvenile court's determinations that A.M. and C.M. are dependent children are not against the manifest weight of the evidence. Our review shows the juvenile court properly considered all of the testimony and evidence provided and adjudicated A.M. and C.M. to be dependent.

{¶ 23} Therefore, the third assignment of error is overruled.

{¶ 24} Accordingly, judgment is affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court, juvenile division, to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
MARY J. BOYLE, JUDGE

EMANUELLA D. GROVES, P.J., and
SEAN C. GALLAGHER, J., CONCUR