OPINION
{¶ 1} Ronald Chris Green appeals from his conviction and sentence in the Montgomery County Common Pleas Court on one count of aggravated burglary and one count of aggravated robbery. In his sole assignment of error, Green contends the trial court erred in overruling his motion to suppress a witness' photo identification of him as the perpetrator of the crimes.
 {¶ 2} The present appeal stems from the July 15, 2001, robbery of a Church's Chicken restaurant. Detective Christen Beane investigated the crime and, through a tip from an unnamed source, identified Green as a suspect. Two days after the robbery, Beane presented a six-picture photo array to Church's Chicken employee Tyona McCleskey, who had witnessed the crime. The array included Green's picture, and McCleskey immediately identified him as the person who had robbed the restaurant. The State subsequently charged Green with aggravated burglary, aggravated robbery, and two counts of kidnaping. Each count included a firearm specification.
 {¶ 3} On September 6, 2001, Green moved to suppress McCleskey's photo identification, arguing that the identification process was unduly suggestive. Following an evidentiary hearing, the trial court rejected Green's argument. He later pled no contest to aggravated burglary and aggravated robbery in exchange for the dismissal of the two kidnaping charges and all firearm specifications. The trial court found Green guilty and imposed concurrent eight-year prison sentences. Green then filed a timely appeal.
 {¶ 4} In his lone assignment of error, Green asserts that the photo identification process was so unduly suggestive that it rendered McCleskey's identification of him unreliable. Green's argument is not that the other five photos in the array failed to bear a reasonable resemblance to his picture. Rather, he contends that the identification procedure itself was unduly suggestive. In essence, he suggests that Beane and McCleskey both knew his identity beforehand and had agreed that McCleskey would select his photograph. As a result, he argues that the trial court should have suppressed the photo identification.
 {¶ 5} Upon review, we find Green's argument to be without merit. In order to justify suppressing a pretrial identification, a defendant must demonstrate (1) that the identification procedure used was so impermissibly suggestive as to give rise to a very substantial likelihood of misidentification, and (2) that the identification in fact was unreliable under the totality of the circumstances. State v. Gooden, Montgomery App. No. 19231, 2003-Ohio-905; Neil v. Biggers (1972),409 U.S. 188. In other words, even if an identification procedure was overly suggestive, the identification remains admissible if sufficient evidence of reliability exists. A determination of reliability is unnecessary, however, where an identification procedure was not unduly suggestive. State v. Glass (March 9, 2001), Greene App. No. 2000 CA 74.
 {¶ 6} In the present case, the trial court concluded that Green had failed to demonstrate an unduly suggestive identification procedure. This conclusion is supported by Beane's testimony, which the trial court was entitled to credit. State v. Potter (Oct. 16, 1998), Montgomery App. No. 16928. Among other things, Beane testified that she read McCleskey the "Photographic Show-up Instructions" included on the photo sheet. Those instructions advised that the photo array "may or may not contain a picture of the person who committed the crime[.]" Beane testified that she then handed McCleskey the photo array and did nothing to suggest whom McCleskey should select. According to Beane, McCleskey immediately identified Green as the perpetrator.
 {¶ 7} In an effort to challenge the identification process, Green relies largely on McCleskey's testimony to establish a number of facts — most of which either are irrelevant or tend to suggest that McCleskey's photo identification was unobjectionable. For example, Green stresses that McCleskey knew him prior to the robbery and made Beane aware of that fact. Indeed, the record reflects that McCleskey knew his name, had seen him in the area, and even had spoken with him before the robbery. Unfortunately for Green, the fact that McCleskey knew him prior to the crime only enhances the reliability of her photo identification.[1] State v. Huff (2001), 145 Ohio App.3d 555,564 ("A strong showing of reliability can arise from the fact that a victim knew the perpetrator of a crime before the crime was committed.");State v. Barnett (1990), 67 Ohio App.3d 760, 768
("One of the strongest * * * external factors which may be used to prove the accuracy of the identification is the situation where the witness already knew the perpetrator before the crime was committed.").
 {¶ 8} The other facts cited by Green are equally unpersuasive. Green notes that he became a suspect as a result of a tip from an "unnamed" source, but he fails to explain the relevance of this fact to the validity of McCleskey's identification. In addition, Green cites McCleskey's testimony that several other individuals were present when she viewed the photo array, and that Beane sat next to her. Although Green fails to explain the relevance of these facts, he may be attempting to establish coercion. McCleskey expressly testified, however, that Beane did not use any pressure to obtain the identification and did not provide any assistance. Green also cites McCleskey's testimony that after she identified him as the perpetrator, Beane indicated that the selection was correct. This alleged post-identification statement by Beane cannot have rendered unduly suggestive the photo identification process that preceded it.[2] Likewise, the fact that McCleskey knew she was reviewing photos of potential suspects is insignificant, particularly in light of the applicable instructions, which advised her that the perpetrator may or may not be shown in the array. Notably, McCleskey also admitted that Beane told her no identification was required if she could not pick out the perpetrator or if his picture did not appear in the array.
 {¶ 9} Green also stresses McCleskey's testimony that Beane met with her so she "could identify Chris." Although McCleskey explained the purpose of the meeting in these words, her terminology is understandable given her prior familiarity with Green and her knowledge that he had committed the crime. Contrary to the implication made in Green's brief, Beane did not announce that the purpose of the meeting was to "identify Chris." Rather, Beane merely presented McCleskey with the photo array and asked whether she recognized anyone who may have participated in the robbery.
 {¶ 10} Green next contends that McCleskey admitted not reviewing all six photographs before identifying him as the perpetrator. In reality, McCleskey testified that she did not need to look at all of the pictures in order to be sure of her choice. Her testimony is ambiguous as to whether she nevertheless did review them all. In any event, McCleskey's ability to identify Green immediately, without reviewing all six pictures, seemingly would go to the reliability of her identification rather than whether the identification process itself was unduly suggestive. As mentioned above, the trial court had no need to consider that issue.
 {¶ 11} Having reviewed Green's arguments and the suppression hearing transcript, we find no error in the trial court's determination that the photo identification process was not unduly suggestive. Accordingly, we overrule Green's assignment of error and affirm the judgment of the Montgomery County Common Pleas Court.
Judgment affirmed.
FAIN, P.J., and WOLFF J., concur.
[1] Defense counsel candidly conceded during the suppression hearing that McCleskey's prior familiarity with Green in essence made the photo identification "superfluous," insofar as it merely confirmed what McCleskey already knew and, apparently, had told Beane. Cf. State v.Huff (2001), 145 Ohio App.3d 555, 564 ("Huff had been identified by name as someone the victims knew before they had been shown the photograph. Thus, the victims identified Huff on a basis independent from the photograph. The photograph was not used to identify an unknown attacker, but was used merely to confirm Huff's true identity.").
[2] At most, such a statement by Beane could affect only the reliability of the identification by causing McCleskey to become more certain of the choice that she had made. In the present case, however, the trial court had no need to address the reliability of the identification because Green failed to make a threshold showing that the process leading up to the identification was unduly suggestive. Glass, supra. In any event, based on the fact that McCleskey already knew Green and identified his picture immediately, we harbor little doubt that the identification was reliable.