OPINION
{¶ 1} Defendant-appellant Timothy Blue appeals from his conviction and sentence, following a no-contest plea, for Aggravated Robbery. Blue contends that the trial court erred by denying his motion to suppress a photograph identification based upon what he contends was an unduly suggestive photographic array identification procedure.
 {¶ 2} Where, as here, an officer uses a computer monitor to display photographic arrays, the witness looks at over 100 photographs without identifying the perpetrator, the officer then, without intending to do so, and without realizing that he has done so, causes the computer to generate a screen consisting of six photographs, five of which are of the defendant, the victim-witness immediately recognizes the defendant from his photograph, reacts emotionally, and is sure of her identification, we conclude that no constitutional violation has occurred. The fact that the identification occurred when the victim-witness was shown a screen of six photographs, five of which were of the defendant, is a circumstance affecting the weight to be given the witness's identification testimony, but is not a due process violation warranting suppression. Accordingly, the trial court did not err in denying Blue's motion to suppress, and the judgment of the trial court is Affirmed.
 I {¶ 3} Dionne Green was robbed at gunpoint by a man who was sitting in the back seat of her car. Eight days after the robbery, Green went to the police station, at the request of Dayton Police Detective Mark Bilinski, to view photos of possible suspects. Bilinski used Green's description of the perpetrator to generate photos of possible suspects on a computer monitor. Green looked at about 150 photographs generated in this way without identifying the perpetrator.
 {¶ 4} Bilinski then attempted to generate photos of possible suspects with the nickname of "Blue," but no suspects were generated. Next, Bilinski caused the computer to generate photos of possible suspects with the last name of Blue. From the time Green finished looking at the first 150 photographs of possible suspects to the time she was shown the monitor screen containing six photos of possible suspects with the last name of Blue, five of which were photos of defendant Timothy Blue, was no more than a minute or two. When these photos "flashed up," Green said, "that's him."
 {¶ 5} In her testimony at the suppression hearing, Green indicated that she understood that all of the initial 125 to 150 photographs she was shown were of persons named Blue, so it is reasonable to infer that she was not aware that the set of six photographs from which she identified the defendant, of which five were photographs of the defendant, was the first set obtained by using Blue as a name. It should be noted that although five of the six photographs in this set were of the defendant, they were not the same photographic views — they were different views of the same person. Both Bilinski and Green testified that Green's identification of Blue from his photograph was immediate, and that she was sure of her identification.
 {¶ 6} Finally, it is clear from Bilinski's testimony that he did not expect that when he caused the computer to search for photographs of persons named Blue, a set of six photographs would be generated containing five photographs of defendant Timothy Blue. Bilinski testified that he was not aware that five of the six photographs were of the same person until after Green made her identification, which was immediate upon the photographs "flashing up" on the monitor.
 {¶ 7} Blue, who was indicted on one count of Aggravated Robbery, moved to suppress the identification testimony, contending that it was obtained as a result of an unduly suggestive photographic array. Following a hearing, Blue's motion to suppress was overruled. Blue then pled no contest, was found guilty, and was sentenced accordingly. From his conviction and sentence, Blue appeals.
 II {¶ 8} Blue's sole assignment of error is as follows:
 {¶ 9} "THE TRIAL COURT ERRED BY OVERRULING DEFENDANT'S MOTION TO SUPPRESS THE PRE-TRIAL IDENTIFICATION."
 {¶ 10} Blue relies upon Neil v. Biggers (1972), 409 U.S. 188,93 S. Ct. 375, and State v. Green, 2003-Ohio-5744, a decision of this court in which we followed Neil v. Biggers, for the proposition that a pre-trial identification procedure must be suppressed where it is so impermissibly suggestive as to give rise to a very substantial likelihood of misidentification, and the identification is, in fact, unreliable under the totality of the circumstances. In Neil v. Biggers, supra, the United States Supreme Court recognized that one purpose of a strict rule barring evidence resulting from unnecessarily suggestive confrontations would be to deter police from using a less reliable procedure where a more reliable one may be available. Id., at 199. In the case before us, we see no need to utilize a prophylactic rule of deterrence, since it is evident from the record that Detective Bilinski did not expect that the computer system he was using would generate a screen consisting of six photographs, five of which would be of the same person. Obviously, as the trial court noted in its decision, this is a less than optimal identification procedure, which should be avoided, where feasible, in the future.
 {¶ 11} A second, and arguably more important purpose of the rule against unnecessarily suggestive pre-trial identification procedures is to avoid unreliable identifications. Thus, "the central question" is "whether under the `totality of the circumstances' the identification was reliable even though the confrontation procedure was suggestive." Id. We agree with the trial court that in the case before us, the answer to this "central question" is in the negative.
 {¶ 12} Green was shown about 150 photographs, without making an identification, before she identified Blue. She did not know that Bilinski had changed the search parameters before the next set of photographs was displayed on the monitor; she thought, incorrectly, that all the photographs were of persons named Blue. Once she saw the final set of photographs, her identification of Blue was immediate and definite. From the record, it does not appear that there was time for the inherent suggestiveness of the photospread containing five photos of the same person to have had an effect on Green's identification.
 {¶ 13} We conclude that the evidence in the record supports the trial court's conclusion that, under the totality of the circumstances, Green's identification of Blue was reliable, even though the procedure that Bilinski used, evidently without so intending, was suggestive. Blue's sole assignment of error is overruled.
 III {¶ 14} Blue's sole assignment of error having been overruled, the judgment of the trial court is Affirmed.
Wolff and Young, JJ., concur.
Frederick N. Young, Retired from the Court of Appeals, Second Appellate District, Sitting by Assignment of the Chief Justice of the Supreme Court of Ohio).