OPINION
{¶ 1} Michael Taylor pled no contest to felonious assault, with a firearm specification, after the Montgomery County Court of Common Pleas overruled his motion to suppress evidence. The court found him guilty, and it sentenced him to two years in prison with three additional years of mandatory incarceration for the firearm specification. Taylor was also *Page 2 
required to pay restitution to Darrell Howard, the victim, in the amount of $56,788.16 plus court costs.
 {¶ 2} Taylor appeals from his conviction, arguing that the trial court erred in failing to suppress eyewitness identifications and in failing to dismiss the indictment. For the following reasons, the judgment will be affirmed.
 I {¶ 3} This appeal arises out of a shooting that occurred in the early morning of February 9, 2006, in front of 710 Rockford Avenue in Dayton. When the shooting occurred, Dayton Police Officer Orick had been investigating a complaint of drug activity at that location, and he was "staking out" the site when an individual fired a gun into a vehicle on the street. Darryl Howard was seated in the driver's seat of the vehicle; Thermayne Scott was in the right front passenger's seat. Orick reported the shooting to the dispatcher, and numerous officers, including Detective Michael DeBorde, were called to the scene.
 {¶ 4} Orick described the shooter as a black male, 5' 5" to 5' 9" tall, and 155 to 185 pounds. Orick indicated that the shooter was wearing a long white t-shirt and a black jacket. Scott also provided a description of the shooter, and several witnesses — including Scott and Dana Parks — identified Taylor as the shooter. Cierra Lowe (aka Finee Brown) identified the shooter as "Mike." Cheri Gaden told officers that Taylor had come into a bedroom after the shooting and had hidden something under a mattress. Scott, Lowe, and Gaden were taken to the Safety Building in Dayton for interviews. Taylor was arrested, and he was also transported to the Safety Building.
 {¶ 5} Having been informed that Taylor was the shooter, DeBorde pulled Taylor's *Page 3 
picture from the Montgomery County photo computer system, and he created a six-person photo spread using Taylor's photograph. (DeBorde also pulled the photographs of Dana Parks and Raymond Baker, who were males in the residence at 710 Rockford, and he created separate photo spreads with their photographs.)
 {¶ 6} DeBorde interviewed Gaden, and he presented the photo spreads to her. Detective Elizabeth Martinez interviewed Scott and showed him the photo array prepared by DeBorde; Detective Daniel Hall interviewed Lowe and presented the photo spread to her. Gaden, Scott, and Lowe each identified Taylor as the shooter.
 {¶ 7} On March 31, 2006, Taylor was indicted for felonious assault with a firearm specification and having weapons while under disability. Taylor moved to suppress the identifications by Lowe, Scott, and Gaden from the photographic lineup. The trial court overruled the motion as to Lowe and Scott, finding that the photo array was not unduly suggestive and that the manner in which the identification procedures were conducted was nonsuggestive. Because Gaden did not testify at the suppression hearing, the trial court deferred its ruling as to Gaden's identification.
 {¶ 8} On May 8, 2007, Taylor moved to dismiss the indictment on the ground that the State planned to use Howard's preliminary hearing testimony during trial. Taylor argued that the use of Howard's testimony would violate his constitutional rights as guaranteed by the Confrontation Clause and Crawford v. Washington (2004), 541 U.S. 36. Six days later, Howard entered a negotiated plea of no contest to felonious assault with the firearm specification. The court found him guilty and sentenced him accordingly.
 {¶ 9} Taylor raises two assignments of error on appeal. *Page 4 
 II {¶ 10} "THE TRIAL COURT ERRED IN FAILING TO SUPPRESS EVIDENCE GAINED AGAINST APPELLANT IN VIOLATION OF THE OHIO AND UNITED STATES CONSTITUTIONS."
 {¶ 11} In his first assignment of error, Taylor asserts that the photographic identification process was unduly suggestive and rendered the identifications of him by Lowe and Scott unreliable. Taylor does not claim that the photo array itself was unduly suggestive, i.e., that the five other photographs did not reasonably resemble him.
 {¶ 12} "In order to justify suppressing a pretrial identification, a defendant must demonstrate (1) that the identification procedure used was so impermissibly suggestive as to give rise to a very substantial likelihood of misidentification, and (2) that the identification in fact was unreliable under the totality of the circumstances. State v.Gooden, Montgomery App. No. 19231, 2003-Ohio-905; Neil v. Biggers
(1972), 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401. In other words, even if an identification procedure was overly suggestive, the identification remains admissible if sufficient evidence of reliability exists. A determination of reliability is unnecessary, however, where an identification procedure was not unduly suggestive. State v. Glass
(March 9, 2001), Greene App. No. 2000 CA 74." State v. Green, Montgomery App. No. 19224, 2003-Ohio-5744, ¶ 5.
 {¶ 13} On the same day as the shooting, DeBorde created three photo spreads using Taylor's, Parks' and Baker's descriptors. DeBorde testified that he creates photo spreads the same way every time. He stated that he gets a photograph of the suspect from the Montgomery County photo system. That photograph lists "identifiers" or *Page 5 
descriptors for the individual, such as height, weight, and race. DeBorde stated that he inputs the descriptors into the system and the computer randomly selects individuals who fit the description. The photo spread consists of six photographs.
 {¶ 14} During Cheri Gaden's interview at the Safety Building, DeBorde showed the photo arrays to her. Detective Doyle Burke, who had interviewed Gaden, was also present when DeBorde presented the photo spreads to Gaden. According to DeBorde, the photographs were covered while DeBorde read instructions verbatim for her. DeBorde denied telling Gaden whom to select or otherwise influencing her, and he did not see Burke attempt to influence her selection. Gaden selected Taylor's photo without hesitation. Gaden was then given a copy of the photo spread. She circled the number by his picture, placed her initials next to the number, and signed her name to the bottom of the copy.
 {¶ 15} Detective Elizabeth Martinez interviewed Scott at the Safety Building after the shooting. Martinez testified that she was aware that Scott had been in the car when the offense occurred, and that the car had hit a cruiser after the shooting. She indicated that Scott complained of some soreness in his back during his interview.
 {¶ 16} During the interview, Martinez provided Scott the photo spread that DeBorde had prepared using Taylor's photo. Martinez testified that she sat down directly in front of Scott and read to him the instructions located on the bottom of the photo spread. She then laid the photo spread on the table in front of him. In contrast, Scott indicated that he read the instructions himself with Martinez reading along, and that he could see the photographs while he was reading. Martinez and Scott both testified that Scott immediately identified Taylor's photograph. According to Martinez, *Page 6 
Scott stated, "I'm thinking it's No. 2. I believe he's the shooter." As with Gaden, Scott was presented a copy of the photo spread. Scott and Martinez both signed the copy. On the lower right corner, Scott wrote the number of the photo that he identified and the date. Martinez wrote Taylor's name. Scott and Martinez both stated that Martinez did not tell or suggest to Scott whom to select.
 {¶ 17} After the interview, Scott was placed in a holding cell. Taylor was subsequently placed in the same cell. Scott indicated that Taylor woke him up and tried to convince him not to talk to the police about the shooting.
 {¶ 18} Lowe indicated that she saw Taylor in the hallway of the Safety Building, in handcuffs, as she was heading to an interview room. Taylor told Lowe, "Don't say nothing" and asked "Why were the police surrounding your house?" Taylor again told Lowe "not to tell." According to Lowe, Taylor was wearing different clothes than he had worn at Rockford Avenue.
 {¶ 19} Detective Hall subsequently took Lowe's statement. At the end of the interview, the detective left the room and returned with the photo spread. Hall and Lowe both testified that the detective read the instructions on the bottom of the form and gave her an opportunity to review them. Upon viewing the six photos, Lowe selected Taylor. Hall and Lowe testified that the detective did not indicate a person to identify as the shooter.
 {¶ 20} On appeal, Taylor argues that Lowe's encounter with Taylor in the hallway prior to her photographic identification constituted a "suggestive confrontation," which raises concerns about Lowe's ability to accurately identify the perpetrator. As to Scott, Taylor notes that Scott had complained of soreness during his interview and *Page 7 
stated that he "thought" the shooter was depicted in photo number 2, Taylor's photograph. As stated above, Taylor does not challenge the composition of the photo array.
 {¶ 21} Upon review, we find Taylor's arguments to be without merit. Although Scott complained of soreness to Martinez, there is no evidence that the police used Scott's physical condition in an effort to influence Scott's identification. The trial court thus reasonably determined that the manner in which the identification was conducted was nonsuggestive. Because the photo identification procedure was not unduly suggestive, "any remaining questions as to reliability go to the weight of the identification, not its admissibility." State v. Garrett, Montgomery App. No. 22262, 2008-Ohio-3710, ¶ 13, quoting State v.Wills (1997), 120 Ohio App.3d 320, 324, 697 N.E.2d 1072.
 {¶ 22} With regard to Lowe's identification, Taylor claims that Lowe's photographic identification was inadmissible solely because Lowe witnessed Taylor in handcuffs at the Safety Building prior to her interview. There is no evidence, however, that detectives arranged for the hallway encounter or intended to influence Lowe's identification. Although Lowe's encounter with Taylor at the Safety Building may affect the weight to be given to her identification, we find no basis to conclude that the photographic identification was unduly suggestive.
 {¶ 23} In its ruling, the trial court did not address the reliability of Scott's and Lowe's identifications of Taylor — a proper approach considering that the court would not allow Taylor's counsel to inquire about the reliability of the identifications at the suppression hearing. However, we note that the record reflects that Scott and Lowe *Page 8 
had met Taylor at a bar hours before the shooting and that Taylor had been at Lowe's apartment for approximately an hour before the shooting occurred. Scott had informed the police that Taylor was the shooter prior to the photographic identifications; Lowe told the police that "Mike" was the shooter. DeBorde testified that he created Taylor's photo array based on information that Lowe, Scott, and Parks had named Taylor as the shooter. In light of Lowe's and Scott's prior familiarity with Taylor and their prior statements indicating that Taylor was the shooter, the record suggests that any error in the trial court's failure to suppress the photographic identifications would be harmless.
 {¶ 24} The first assignment of error is overruled.
 III {¶ 25} Taylor's second assignment of error states:
 {¶ 26} "THE TRIAL COURT ERRED IN FAILING TO DISMISS THE CHARGES AGAINST APPELLANT."
 {¶ 27} In this assignment of error, Taylor asserts that the trial court should have dismissed the indictment because the State planned to use Darrell Howard's preliminary hearing testimony at trial. Taylor argues that the use of Howard's preliminary hearing testimony would violate his confrontation rights, because preliminary hearing proceedings do not involve meaningful cross-examination, as contemplated by Crawford. He further asserts that the State's use of Howard's preliminary hearing testimony "could reasonably have induced Appellant to enter a no contest plea in this case, realizing that his due process and a fair trial would not have been protected under these circumstances."
 {¶ 28} Although Taylor's motion to dismiss asserted that the State intended to *Page 9 
use Howard's preliminary hearing testimony, nothing in the record supports that assertion. Significantly, the trial court was not asked to allow or disallow the use of that testimony, and the court made no ruling on that issue. In the absence of a ruling permitting the use of Howard's preliminary hearing testimony, Taylor has not suffered any prejudice by the State's alleged plans to use Howard's prior testimony. Taylor's plea renders the issue moot. We find Taylor's claim that he was induced to enter a plea based on his belief that the State would attempt to use Howard's preliminary hearing testimony to be specious.
 {¶ 29} The second assignment of error is overruled.
 IV {¶ 30} The judgment of the trial court will be affirmed.
 BROGAN, J. and FAIN, J., concur. *Page 1