[Cite as *State v. Chaffin*, 2012-Ohio-634.]

IN THE COURT OF APPEALS FOR MONTGOMERY COUNTY, OHIO

STATE OF OHIO                               :

    Plaintiff-Appellee                    :          C.A. CASE NO.    24241

v.                                          :          T.C. NO.    2010 CR 388/2

CLIFFORD M. CHAFFIN                         :          (Criminal appeal from
                                                       Common Pleas Court)
    Defendant-Appellant                   :

                                            :

. . . . . . . . . .

**O P I N I O N**

Rendered on the ___17th___ day of ____February____, 2012.

. . . . . . . . . .

R. LYNN NOTHSTINE, Atty. Reg. No. 0061560, Assistant Prosecuting Attorney, 301 W. Third Street, 5th Floor, Dayton, Ohio 45422
    Attorney for Plaintiff-Appellee

ROBERT ALAN BRENNER, Atty. Reg. No. 0067714, P. O. Box 341021, Beavercreek, Ohio 45434
    Attorney for Defendant-Appellant

. . . . . . . . . .

DONOVAN, J.

{¶ 1} Defendant-appellant Clifford M. Chaffin appeals from his conviction and sentence for one count of aggravated robbery with a deadly weapon, in violation of R.C. 2911.01(A)(1).

{¶ 2} Chaffin filed a motion for leave to file a delayed appeal with this Court

on September 3, 2010. On September 23, 2010, we granted Chaffin's motion, and he filed the instant appeal.

I

{¶ 3} The incident which forms the basis for the instant appeal occurred on January 24, 2010, outside of an apartment building located at 118 N. Alex Road. At around ten p.m. in the evening, Keith Kelly, who was inside his apartment with his wife, heard the buzzing of a saw from out in the parking lot. When Kelly looked out of his window, he observed a man on the ground next to his wife's truck. Kelly told his wife to call 911 while he retrieved his gun and went outside to investigate.

{¶ 4} Once outside, Kelly observed two pairs of legs protruding out from under the truck. Kelly ordered the individuals to stand. One of the men who crawled out from under the truck was later identified as Chaffin, and he was armed with a knife. The other individual, later identified as Ralleigh Pennington, Chaffin's co-defendant at trial, took off running. Kelly ordered Chaffin to put the knife down, but as he did so, he heard Pennington running back towards him at high speed. Kelly testified that he fired a warning shot in Pennington's general direction, and Pennington ran away. After Kelly fired the gun, Chaffin ran away as well.

{¶ 5} Once the police arrived, Kelly informed West Carrolton Police Officer Daniel J. Wessling that the two men he had encountered were both white, bald, and wearing dark clothing with hoods. Earlier on the day of the attempted robbery, Officer Wessling had observed two individuals matching the description provided by Kelly approximately six blocks away from the scene of the crime.

{¶ 6} With the description provided by Kelly, Officer Wessling created two

photo spreads, each containing six photographs depicting individuals with similar appearances and physical attributes. One of the photo spreads contained a photograph of Chaffin, and the other contained a photograph of Pennington. Officer Wessling met with Kelly at the police station on January 27, 2010, to show him the photo spreads. Kelly positively identified Pennington from the photo spread containing his picture as the individual at whom he had fired the warning shot. Kelly, however, did not select Chaffin from the photo spread, but he identified another individual therein.

{¶ 7} On January 31, 2010, Officer Wessling asked Kelly to come to the station to look at a second photo spread he had created. The photo spread contained a more recent photograph of Chaffin. After being shown the second photo spread, Kelly positively identified Chaffin as the individual who had brandished the knife during the attempted robbery on January 24, 2010. We note that in the second photo spread created by Officer Wessling, Chaffin was the only individual amongst the six who was completely bald on the top of his head.

{¶ 8} Chaffin was subsequently indicted on February 25, 2010, for one count of aggravated robbery with a deadly weapon. At his arraignment on March 2, 2010, Chaffin stood mute, and the trial court entered a plea of not guilty on his behalf. Chaffin filed a motion to suppress Kelly's pre-trial and in-court identifications on March 18, 2010. After a hearing held on April 15, 2010, the trial court overruled Chaffin's motion to suppress, issuing findings of fact and conclusions of law from the bench at the end of the hearing. After a jury trial in which Chaffin and Pennington were tried together, Chaffin was found guilty on May

19, 2010.  On June 3, 2010, the trial court sentenced Chaffin to five years in prison.

{¶ 9}   It is from this judgment that Chaffin now appeals.

II

{¶ 10} Because we find this assignment to be dispositive, we will first address Chaffin's second assignment of error which is as follows:

{¶ 11} "THE TRIAL JUDGE ERRED WHEN HE OVERRULED THE MOTION TO SUPPRESS."

{¶ 12} In his second assignment, Chaffin contends that the trial court erred when it overruled his motion to suppress.  Specifically, Chaffin asserts that the second photo spread shown to Kelly by Officer Wessling was unduly suggestive insofar as Chaffin was the only individual in the spread who was bald on the top of his head.

{¶ 13} With respect to a motion to suppress, "the trial court assumes the role of trier of fact and is in the best position to resolve questions of fact and evaluate the credibility of witnesses." *State v. Hopfer* (1996), 112 Ohio App.3d 521, 548, 679 N.E.2d 321 quoting *State v. Venham* (1994), 96 Ohio App.3d 649, 653, 645 N.E.2d 831.  The court of appeals must accept the trial court's findings of fact if they are supported by competent, credible evidence in the record. *State v. Isaac* (July 15, 2005), Montgomery App. No. 20662, 2005-Ohio-3733, citing *State v. Retherford* (1994), 93 Ohio App.3d 586, 639 N.E.2d 498.  Accepting those facts as true, the appellate court must then independently determine, as a matter of law and without deference to the trial court's legal conclusion, whether the applicable legal standard

is satisfied. Id.

{¶ 14} To warrant suppression of identification testimony, the accused bears the burden of showing that the identification procedure was "so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification" and that the identification itself was unreliable under the totality of the circumstances. *Manson v. Brathwaite* (1977), 432 U.S. 98, 106, 97 S.Ct. 2243, 53 L.Ed.2d 140; *Neil v. Biggers* (1972), 409 U.S. 188, 199, 93 S.Ct. 375, 34 L.Ed.2d 401, 88 S.Ct. 967, 19 L.Ed.2d 1247; *Simmons v. United States* (1968), 390 U.S. 377, 384. See, also, *State v. Broom* (1988), 40 Ohio St.3d 277, 284, 533 N.E.2d 682; *State v. Moody* (1978), 55 Ohio St.2d 64, 67, 377 N.E.2d 1008.

{¶ 15} In *State v. Sherls*, Montgomery No. 18599, 2002-Ohio-939, this court addressed the issue of suggestive photographic confrontations:

{¶ 16} "In many cases, and in almost all cases in which the criminal offender is not known to his victim or other eyewitnesses and is not arrested at the time of the crime, those who witness the crime are asked to identify the perpetrator for purposes of police investigation through some form of confrontation. This confrontation may be in the form of a 'lineup,' a one-on-one 'show up,' or from a photograph or series of photographs displayed to the witness. When any of these systems of confrontation suggest, due to the manner or mode of their presentation, that one individual is more likely than others to be the perpetrator of the crime, that fact increases the likelihood of misidentification and violates the right to due process of law of a defendant so identified. Identification testimony that has been tainted by an unduly or unnecessarily suggestive out-of-court confrontation may be

suppressed on that basis.

{¶ 17} "However, even when a confrontation is unnecessarily or unduly suggestive, the identification testimony derived from the confrontation is not inadmissible solely for that reason. Reliability of the testimony is the linchpin in determining its admissibility. So long as the identification possesses sufficient aspects of reliability, there is no violation of due process.

{¶ 18} "Reliability is determined from the totality of the circumstances. These circumstances include the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of his prior description of the criminal, the level of certainty demonstrated at the confrontation, and the time between the crime and the confrontation. Against these factors is to be weighed the corrupting effect of the suggestive identification itself.

{¶ 19} "The foregoing due process concerns are implicated only if and when a confrontation is unnecessarily or unduly suggestive. That prospect usually arises when the witness has been shown but one subject, whether in a 'showup' * * * or a single photograph * * *. Similarly, if the witness is shown pictures or photographs of several persons in which the photograph of one recurs or is in some way emphasized, undue suggestion may occur. However, even when the confrontation process is unduly or unnecessarily suggestive, the later identification testimony should not be excluded so long as the identification itself is reliable." See *State v. White* (Feb. 2, 1994), Clark App. No. 3057.

{¶ 20} In *State v. Lathan* (1972), 30 Ohio St.2d 92, 282 N.E.2d 574, the Ohio Supreme Court held that the in-court identification of a defendant does not have to

be excluded as long as the state can establish by clear and convincing evidence that the in-court identification is based on an observation independent of the pretrial identification or that the error was harmless. The Ohio Supreme Court has also held that although an identification procedure is suggestive, as long as the in-court identification is reliable, it is admissible. *State v. Barker* (1978), 53 Ohio St.2d 135, 142, 372 N.E.2d 1324.

{¶ 21} The State cites *State v. Browner*, 4th Dist. No. 99CA2688, 2001 WL 812805 (May 31, 2001), in support of its argument that the trial court did nor err when it overruled Chaffin's motion to suppress. In *Browner*, the victim of an aggravated robbery described his assailant as "like bald in the front and short hair." The victim was then shown a photo spread in which the defendant was the only bald person pictured. The victim identified the defendant from the photo spread as his assailant. The trial court overruled the defendant's motion to suppress, and the appeals court agreed, holding that "when assembling the [photo spread], the police were not required to insert only bald headed men because hairstyles may change. One may be bald one week and have at least some hair the next." Id. In *Browner*, however, the victim was only shown one photo spread from which he clearly identified the defendant as the perpetrator. Id. Moreover, the appeals court noted that the photo spread contained one bald person and "possibly two more." Thus, it is not even clear whether the defendant was the only bald or partially bald individual pictured in the photo spread.

{¶ 22} In the instant case, it is undisputed that Kelly failed to identify Chaffin as the individual wielding the knife from the first photo spread shown to him by

Officer Wessling. In fact, Chaffin identified someone else entirely as the perpetrator who threatened him with the knife. We note that Kelly looked at the first photo spread for approximately ten to fifteen minutes before choosing the wrong individual. We also note that in the first photo spread, Chaffin's photo was placed in the number six position, while the individual he incorrectly chose was in the first position.

{¶ 23} In the second photo spread, Officer Wessling once again placed a photograph of Chaffin, albeit a more recent picture, in the sixth position. In this photo spread, however, Chaffin was the only individual out of six males who was bald on the top of his head. Furthermore, Chaffin was the only individual depicted in both spreads. Chaffin argues the because he was the only bald individual pictured, the photo spread was impermissibly suggestive. Upon review, we conclude that the procedure utilized by Officer Wessling was inherently suggestive. It was improper to show Kelly the second photo spread when he had already circled and initialed the picture of another individual, thereby identifying him as the perpetrator. The suggestive nature of this successive photo spread process is evidenced by the fact that Chaffin was the only bald male pictured in the second photo spread, and Chaffin's photograph was in the sixth position in both photo spreads. Significantly, Chaffin was the only individual depicted in both spreads. Even the individual previously selected by Kelly was not depicted in the second spread for comparative purposes.

{¶ 24} Although we conclude that the trial court erred in its finding regarding suggestiveness, there are no factual findings regarding the second prong of the

analysis with respect to the reliability of the identification. This matter is remanded for the trial judge to make such findings. Should the trial court deem the photo spread identification unreliable, a further determination must be made as to the admissibility of the in-court identification.

{¶ 25} Chaffin's second assignment of error is sustained in part and remanded for additional findings consistent with this opinion.

III

{¶ 26} Chaffin's remaining assignments of error are as follows:

{¶ 27} "THE TRIAL COURT JUDGE COMMITTED PLAIN ERROR WHEN HANDLING JUROR NUMBER FOUR DURING THE DELIBERATION PHASE OF THE TRIAL."

{¶ 28} "THE TRIAL JUDGE ERRED WHEN HE REFUSED TO GRANT A MISTRIAL."

{¶ 29} "THE DEFENDANT WAS DEPRIVED OF THE EFFECTIVE ASSISTANCE OF COUNSEL WHEN HIS COUNSEL FAILED TO MOVE FOR A SEVERANCE."

{¶ 30} "THE TRIAL COURT ERRED BY IMPOSING COURT COSTS IN THE SENTENCING ENTRY WITHOUT IMPOSING COURT COSTS AT THE SENTENCING HEARING."

{¶ 31} "THE TRIAL COURT ERRED BY DISAPPROVING THE TRANSFER OF THE DEFENDANT TO TRANSITIONAL CONTROL IN THE SENTENCING ENTRY."

{¶ 32} In light of our disposition with respect to Chaffin's second assignment

of error, his remaining assignments are rendered moot.

IV

{¶ 33}   Chaffin's second assignment of error having been sustained in part, this matter is remanded for further proceedings consistent with this opinion.

. . . . . . . . . .

GRADY, P.J. concurs.


HALL, J., concurring:

{¶ 34} When shown a photo spread containing an old, poor-quality picture of the defendant, the victim selected   another individual, and indicated he was about 80% sure.   Several days later, the victim was shown a photo spread containing an updated photo of the defendant, who was the only completely bald subject in the array. (The heads of the other subjects were closely shaven, but not bald, or were partially bald and closely shaven.)   The second spread did not contain the subject the victim picked out of the first spread.

{¶ 35} Determination of whether there is a suggestive array or suggestive procedure is the first prong of pre-trial identification analysis. I see nothing inherently suggestive with the showing of a second updated photo spread to a victim who has already picked someone out.   Also, having only one completely bald subject in the array is not, by itself, unconstitutionally suggestive because hairstyles can be changed. Nevertheless, in the unique circumstances of this case I agree that the trial court should have found that the second photo spread and its presentation was suggestive. Accordingly, I agree that the matter should be

remanded to the trial court for further proceedings.

. . . . . . . . . .

Copies mailed to:

R. Lynn Nothstine
Robert Alan Brenner
Hon. Dennis J. Langer