[Cite as *State v. Chaffin*, 2014-Ohio-2671.]

# IN THE COURT OF APPEALS OF OHIO
## SECOND APPELLATE DISTRICT
## MONTGOMERY COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No.     25220 |
| | : | |
| v. | : | Trial Court Case No.   2010-CR-388/2 |
| | : | |
| CLIFFORD CHAFFIN | : | |
| | : | (Criminal Appeal from |
| Defendant-Appellant | : |  Common Pleas Court) |
| | : | |

. . . . . . . . . . .

## O P I N I O N

Rendered on the 20th day of June, 2014.

. . . . . . . . . . .

MATHIAS H. HECK, JR., by ANDREW T. FRENCH, Atty. Reg. No. 0069384, Assistant Prosecuting Attorney, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, P.O. Box 972, 301 West Third Street, Dayton, Ohio 45422
      Attorney for Plaintiff-Appellee

BROCK A. SCHOENLEIN, Atty. Reg. No. 0084707, 15 West Fourth Street, Suite 100, Dayton, Ohio 45402
      Attorney for Defendant-Appellant

. . . . . . . . . . . . .

WELBAUM, J.

{¶ 1} Defendant-appellant, Clifford Chaffin, appeals from the decision of the Montgomery County Court of Common Pleas on remand overruling his motion to suppress evidence of his pre-trial identification. In Chaffin's original appeal, we sustained his suppression claim in part, holding that the pre-trial identification procedure used by police was inherently suggestive. However, we remanded the matter back to the trial court to determine whether the pre-trial identification was otherwise reliable and thus admissible. In addition to his suppression claim, Chaffin raised five other assignments of error in his original appeal, all of which we found moot. Now, in addition to appealing from the trial court's decision on remand, Chaffin has also raised the five assignments of error that were deemed moot in his original appeal. For the reasons outlined below, we will affirm the trial court's decision in part, reverse in part, and remand the matter back to the trial court for the limited purpose of permitting Chaffin to request a waiver of court costs and for the trial court to revise the language in the termination entry as instructed in this opinion.

### Facts and Course of Proceedings

{¶ 2} The facts underlying Chaffin's offense in this matter are fully set forth in our opinion in *State v. Chaffin*, 2d Dist. Montgomery No. 24241, 2012-Ohio-634, which states the following:

The incident which forms the basis for the [original] appeal occurred on January 24, 2010, outside of an apartment building located at 118 N. Alex Road. At around ten p.m. in the evening, Keith Kelly, who was inside his apartment with

his wife, heard the buzzing of a saw from out in the parking lot. When Kelly looked out of his window, he observed a man on the ground next to his wife's truck. Kelly told his wife to call 911 while he retrieved his gun and went outside to investigate.

Once outside, Kelly observed two pairs of legs protruding out from under the truck. Kelly ordered the individuals to stand. One of the men who crawled out from under the truck was later identified as Chaffin, and he was armed with a knife. The other individual, later identified as Ralleigh Pennington, Chaffin's co-defendant at trial, took off running. Kelly ordered Chaffin to put the knife down, but as he did so, he heard Pennington running back towards him at high speed. Kelly testified that he fired a warning shot in Pennington's general direction, and Pennington ran away. After Kelly fired the gun, Chaffin ran away as well.

Once the police arrived, Kelly informed West Carrolton Police Officer Daniel J. Wessling that the two men he had encountered were both white, bald, and wearing dark clothing with hoods. Earlier on the day of the attempted robbery, Officer Wessling had observed two individuals matching the description provided by Kelly approximately six blocks away from the scene of the crime.

With the description provided by Kelly, Officer Wessling created two photo spreads, each containing six photographs depicting individuals with similar appearances and physical attributes. One of the photo spreads contained a photograph of Chaffin, and the other contained a photograph of Pennington.

Officer Wessling met with Kelly at the police station on January 27, 2010, to show him the photo spreads. Kelly positively identified Pennington from the photo spread containing his picture as the individual at whom he had fired the warning shot. Kelly, however, did not select Chaffin from the photo spread, but he identified another individual therein.

On January 31, 2010, Officer Wessling asked Kelly to come to the station to look at a second photo spread he had created. The photo spread contained a more recent photograph of Chaffin. After being shown the second photo spread, Kelly positively identified Chaffin as the individual who had brandished the knife during the attempted robbery on January 24, 2010. We note that in the second photo spread created by Officer Wessling, Chaffin was the only individual amongst the six who was completely bald on the top of his head.

Chaffin was subsequently indicted on February 25, 2010, for one count of aggravated robbery with a deadly weapon. At his arraignment on March 2, 2010, Chaffin stood mute, and the trial court entered a plea of not guilty on his behalf. Chaffin filed a motion to suppress Kelly's pre-trial and in-court identifications on March 18, 2010. After a hearing held on April 15, 2010, the trial court overruled Chaffin's motion to suppress, issuing findings of fact and conclusions of law from the bench at the end of the hearing. After a jury trial in which Chaffin and Pennington were tried together, Chaffin was found guilty on May 19, 2010. On June 3, 2010, the trial court sentenced Chaffin to five years in prison. *Chaffin*, 2d Dist. Montgomery No. 24241, 2012-Ohio-634 at ¶ 3-8.

{¶ 3} Chaffin appealed from his conviction, raising six assignments of error. As part of his appeal, Chaffin claimed that the trial court erred in overruling his motion to suppress Kelly's pre-trial and in-court identifications. On February 17, 2012, we issued an opinion concluding that the procedure used by police to identify Chaffin was inherently suggestive. *Id.* at ¶ 22-24. However, we explained that:

Although we conclude that the trial court erred in its finding regarding suggestiveness, there are no factual findings regarding the second prong of the analysis with respect to the reliability of the identification. This matter is remanded for the trial judge to make such findings. Should the trial court deem the photo spread identification unreliable, a further determination must be made as to the admissibility of the in-court identification. *Id.* at ¶ 24.

Accordingly, we sustained Chaffin's suppression claim in part, and remanded the matter back to the trial court for further proceedings. *Id.* at ¶ 33. We also found Chaffin's five remaining assignments of error moot in light of our decision to remand the matter on the suppression issue. *Id.* at ¶ 32.

{¶ 4} On remand, the trial court held a supplemental evidentiary hearing on March 30, 2012. The only witness who testified at the hearing was Keith Kelly, as Kelly did not testify at the original suppression hearing. At the hearing, Kelly testified that he was seven to eight feet from both of the men who jumped from underneath his truck. Kelly also testified that he had a clear view of Chaffin's face, as no hood, mask, or glasses were shielding it. In addition, Kelly testified that it was his intention to keep Chaffin in his view until the police came. Kelly said Chaffin was holding a knife next to his face, and that he observed Chaffin at a distance of seven to eight feet for approximately 40 seconds.

{¶ 5} With respect to visibility, Kelly testified that he has 20/20 vision and that although it was raining and dark at the time of the incident, there were multiple lights illuminating the area. Kelly also noted that he worked for the Department of Rehabilitation and Corrections and that he was trained to read body language and facial expressions. He claimed that during the incident, Chaffin "froze" and had a "not-knowing-what-to-do-next look" on his face. Hearing Trans. (Mar. 30, 2012), p. 16.

{¶ 6} Additionally, Kelly testified that he provided the police with a description of each suspect, describing them as two bald white males, one with facial hair. Kelly also testified that he was shown the first photo spread by Officer Wessling three days after the robbery. According to Kelly, he initially picked out two photographs marked as photograph #1 and photograph #6, but ultimately chose the individual depicted in photograph #1. He testified that he wavered between these two photographs and told Officer Wessling that he was only 75-80 percent sure that the individual depicted in photograph #1 was the perpetrator. When asked why he selected photograph #1, Kelly explained that his choice was based on the grooming style of the individual's facial hair and eyebrows. Kelly testified that he was not 100 percent sure of his choice due to the fact that both individuals in photographs #1 and #6 had hair, whereas the man he observed with the knife during the robbery was bald. Chaffin was the individual depicted in photograph #6.

{¶ 7} Next, Kelly testified that he was asked by Officer Wessling to look at a different photo spread seven days after the robbery. Kelly testified that after being shown the second photo spread, he immediately picked out the individual shown in photograph #6, which was a more recent photograph of Chaffin. According to Kelly, he did not waver between any of the other pictures in the second photo spread, and he knew that photograph #6 depicted the

perpetrator "beyond a shadow of a doubt." *Id*. at p. 30. He said his decision was based on the fact that he looked at Chaffin and remembered him from the night of the robbery. *Id*. Kelly also testified that his in-court identification of Chaffin was based on his observations of Chaffin at the time of the robbery, and independent from the pre-trial photo spread.

{¶ 8} Following the supplementary evidentiary hearing, the trial court found Kelly to be a credible witness and made various findings regarding his ability to observe Chaffin during the robbery. In light of these findings, the trial court determined that Kelly's pre-trial and in-court identifications of Chaffin were reliable and overruled Chaffin's motion to suppress. Chaffin now appeals from the trial court's decision on remand, as well as from his conviction and sentence, raising nine assignments of error for review.

### Assignment of Error No. I

{¶ 9} Chaffin's First Assignment of Error is as follows:

THE TRIAL COURT ERRED IN OVERRULING APPELLANT'S MOTION TO SUPPRESS.

{¶ 10} Under his First Assignment of Error, Chaffin argues that the trial court erred in overruling his motion to suppress on remand due to the trial court improperly: (1) holding a supplemental evidentiary hearing; (2) finding Kelly's pre-trial identification of Chaffin reliable; and (3) admitting Kelly's in-court identification of Chaffin as evidence.

*Supplemental Evidentiary Hearing*

{¶ 11} Initially, Chaffin claims that it was error for the trial court to hold a supplemental evidentiary hearing on the reliability issue after his case was remanded. Chaffin contends that

the court was merely instructed to make findings on remand and that the trial court was supposed to decide the reliability issue based solely on what the State had presented at the first suppression hearing. Chaffin claims that since Kelly did not testify at the first suppression hearing, it would be impossible for the State to prove the reliability of Kelly's identification.

{¶ 12} We first note that Chaffin did not object to the trial court holding a supplemental evidentiary hearing, thereby waiving all but plain error on appeal. *State v. Howard*, 2d Dist. Montgomery No. 20575, 2005-Ohio-3702, ¶ 34, citing *State v. Ballew*, 76 Ohio St.3d 244, 251, 667 N.E.2d 369 (1996). Courts are to notice plain error "only to prevent a manifest miscarriage of justice." *State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 (1978), paragraph three of the syllabus. For there to be plain error, there must be an error that is an obvious defect in the trial proceedings that affected the outcome of trial. *State v. Payne*, 114 Ohio St. 3d 502, 2007-Ohio-4642, 873 N.E.2d 306, ¶ 16.

{¶ 13} That said, we do not find that it was plain error for the trial court to hold the supplemental evidentiary hearing, because it was within the trial court's discretion to do so. "When a court of appeals reverses for error and remands for further proceedings, '[t]he court of appeals may or may not specify the nature of the further proceedings, and should not do so if the trial court has discretion as to the nature of the further proceedings.' " *State v. Chinn*, 2d Dist. Montgomery No. 16764, 2000 WL 1458784, *10 (Aug. 21, 1998) (Grady, J. concurring and dissenting), citing to Whiteside, Ohio Appellate Practice (1998), Author's Note to App.R. 12(D). *Accord In re Contempt of Scaldini*, 8th Dist. Cuyahoga No. 94893, 2011-Ohio-822, ¶ 17; *Lorain v. Pendergrass*, 9th Dist. Lorain No. 04CA008437, 2004-Ohio-5688, ¶ 10.

{¶ 14} In ruling on Chaffin's original appeal, we stated that the "matter is remanded for

additional proceedings consistent with this opinion." *Chaffin*, 2d Dist. Montgomery No. 24241, 2012-Ohio-634 at ¶ 33. While we instructed the trial court to make factual findings regarding whether the identification of Chaffin was reliable, we did not specify the nature of the proceedings that were to take place on remand. Accordingly, it was left to the trial court's discretion as to what proceedings were necessary to determine the issue. We do not find that the trial court abused its discretion in holding a supplementary evidentiary hearing on the reliability issue. Therefore, Chaffin's argument that the trial court erroneously held a supplemental evidentiary hearing is without merit and overruled.

*Reliability of Pre-trial Identification*

{¶ 15} Next, Chaffin claims that the trial court erred in finding that Kelly's pre-trial identification of Chaffin was reliable. " 'When a witness has been confronted with a suspect before trial, due process requires a court to suppress [his] identification of the suspect if the confrontation was unnecessarily suggestive of the suspect's guilt *and* the identification was unreliable under all the circumstances.' " (Emphasis sic.) *State v. Murphy*, 91 Ohio St.3d 516, 534, 747 N.E.2d 765 (2001), quoting *State v. Waddy*, 63 Ohio St.3d 424, 438, 588 N.E.2d 819 (1992). However, "even if an identification procedure was overly suggestive, the identification remains admissible if sufficient evidence of reliability exists." (Citations omitted.) *State v. Taylor*, 2d Dist. Montgomery No. 22232, 2008-Ohio-6048, ¶ 12. " 'Reliability of the testimony is the linchpin in determining its admissibility. So long as the identification possesses sufficient aspects of reliability, there is no violation of due process.' " *State v. Sherls*, 2d Dist. Montgomery No. 18599, 2002 WL 254144, *3 (Feb. 22, 2002), quoting *State v. White*, 2d Dist. Clark No. 3057, 1994 WL 43095, *2 (Feb. 2, 1994).

{¶ 16} To assess whether sufficient evidence of reliability exists, "courts look at 'whether under the "totality of the circumstances" the identification was reliable even though the confrontation procedure was suggestive.' " *State v. Montgomery*, 2d Dist. Montgomery No. 25277, 2013-Ohio-4509, ¶ 33, quoting *Neil v. Biggers*, 409 U.S. 188, 199, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972). " '[T]he factors to be considered in evaluating the likelihood of misidentification include the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation.' " *Id.*, quoting *Biggers* at 199-200. " 'Against these factors is to be weighed the corrupting effect of the suggestive identification itself.' " *Sherls* at *4, quoting *White* at *2.

{¶ 17} " '[T]he trial court assumes the role of trier of fact and is in the best position to resolve questions of fact and evaluate the credibility of witnesses.' " *State v. Hopfer*, 112 Ohio App.3d 521, 548, 679 N.E.2d 321 (2d Dist.1996), quoting *State v. Venham*, 96 Ohio App.3d 649, 653, 645 N.E.2d 831 (4th Dist.1994). In turn, we "must accept the trial court's findings of fact if they are supported by competent, credible evidence in the record." *State v. Isaac*, 2d Dist. Montgomery No. 20662, 2005-Ohio-3733, ¶ 8, citing *State v. Retherford*, 93 Ohio App.3d 586, 592, 639 N.E.2d 498 (2d Dist.1994). Accepting those facts as true, we "must then independently determine, as a matter of law and without deference to the trial court's legal conclusion, whether the applicable legal standard is satisfied." *Id.,* citing *Retherford* at 592.

{¶ 18} In this case, the trial court made findings of fact with respect to each of the factors that are considered when evaluating the reliability of a witness's identification. Upon reviewing the first factor–Kelly's opportunity to view Chaffin at the time of the crime–the trial

court found that Kelly had an excellent opportunity to view Chaffin's face. In support of this finding, the trial court relied on Kelly's testimony that he had 20/20 vision and that the area of the incident was illuminated with a number of lights. In addition, the trial court relied on the fact that Kelly testified he observed Chaffin face to face from a distance of seven to eight feet for approximately 40 seconds.

{¶ 19} As for the second factor–Kelly's degree of attention–the trial court found that Kelly paid very close attention to Chaffin's face. The trial court relied on Kelly's testimony that he received training on how to read body language and facial expressions while working for the Department of Rehabilitation and Corrections. Additionally, the trial court considered Kelly's testimony that Chaffin "froze" with a "not knowing what-to-do-next look," and that he had the opportunity to look at Chaffin's face for approximately 40 seconds. The trial court also noted that Kelly testified Chaffin had the knife up near his face and that he focused on the knife, as well as Chaffin's face.

{¶ 20} In considering the third factor–the accuracy of Kelly's prior description of the criminal–the trial court found that Kelly gave a good description of Chaffin to police on the night of the crime. Kelly accurately described Chaffin as a bald white male with some facial hair to police. The court noted that the only discrepancy in his description of Chaffin was Kelly's failure to notice a small tear drop tattoo near Chaffin's eye. However, the trial court found Kelly's failure to notice the tattoo was understandable given that he was standing seven to eight feet away from Chaffin in drizzling rain. We note that the trial court did not remark on the tattoo located on the side of Chaffin's neck. However, given Kelly's distance from Chaffin, and the fact that Chaffin was wearing a hood, Kelly's failure to notice the neck tattoo is likewise

understandable.

{¶ 21} For the fourth factor–the level of certainty demonstrated by Kelly–the trial court found that Kelly demonstrated a reliable level of certainty regarding his identification of Chaffin. In so holding, the trial court noted that when presented with the first photo spread, Kelly wavered between choosing Chaffin's photo and that of another individual. While Kelly ultimately chose the picture of the other individual, he did so with only 75-80 percent certainty, and made it clear that he was not sure whether his identification was correct. Yet, when Kelly was shown the second photo spread, he testified that he immediately picked out Chaffin's photo and indicated that he was 100 percent certain of his identification. We note that Chaffin was the only individual depicted in both photo spreads. However, Kelly made a point to inform Officer Wessling that his prior identification from the first photo spread was incorrect. In addition, the trial court noted that the picture of Chaffin in the first photo spread was old and showed him with hair, while the picture of Chaffin in the second photo spread was more recent and showed him with a bald head. The court also relied on Kelly's testimony that he did not just pick the photo of Chaffin simply because of the bald head, but because he could clearly see his face on the night of the crime.

{¶ 22} For the fifth factor–the length of time between the crime and Kelly's pre-trial identification–the trial court noted that the first photo spread took place only three days after the crime, with the second photo spread taking place a mere four days later. The trial court then weighed each of the five factors against the corrupting effect of the suggestive pre-trial identification. In doing so, the trial court found by a preponderance of the evidence that Kelly's pre-trial identification of Chaffin possessed sufficient aspects of reliability, and that even though

the identification procedure was inherently suggestive, it was nonetheless admissible.

{¶ 23} Upon reviewing the record, we conclude that the foregoing findings of fact are supported by competent, credible evidence. Therefore, we accept the trial court's factual findings as true. Based on the trial court's findings, we independently find that under the totality of the circumstances, including the fact that Kelly was able to observe Chaffin from a short distance for a period of 40 seconds, Kelly's pre-trial identification of Chaffin was reliable even though the photo spread procedure was suggestive. Since the pre-trial identification possesses sufficient aspects of reliability, there is no violation of due process. Given that we have determined that Kelly's pre-trial identification of Chaffin was reliable and no violation of due process occurred, we need not address the admissibility of Kelly's in-court identification, as we instructed the trial court to make this determination only if it found the pre-trial identification unreliable. *See Chaffin*, 2d Dist. Montgomery No. 24241, 2012-Ohio-634 at ¶ 24.

{¶ 24} Chaffin's First Assignment of Error is overruled.

**Assignment of Error No. IV**

{¶ 25} For ease of discussion, we will address the remainder of Chaffin's assignments of error out of order. His Fourth Assignment of Error is as follows:

THE TRIAL COURT IMPROPERLY ADDRESSED THE PROBLEMS SURROUNDING JUROR NUMBER FOUR AT TRIAL.

{¶ 26} Chaffin raised this assignment of error in his original appeal, and we deemed it to be moot due to our decision on the suppression issue. However, having now affirmed the trial court's decision on remand overruling Chaffin's motion to suppress, this assignment of error is

now ripe for review.

**{¶ 27}** Under this assignment of error, Chaffin contends that the trial court abused its discretion in failing to make a meaningful inquiry regarding whether juror number four's verdicts were voluntary. In support of this claim, Chaffin argues that such an inquiry was necessary after the jury's foreperson advised the court bailiff that the other jurors were concerned that juror number four's verdicts were made under duress.

**{¶ 28}** The record establishes that there were various issues concerning juror number four during the jury's deliberation. Specifically, the bailiff reported to the trial court that during deliberation, juror number four had left the jury room upset and was spotted in the hallway crying. It was also reported that juror number four had signed a jury form outside the presence of the other jurors. When she was confronted by the bailiff, juror number four said that she was tired, wanted to go home, and that she did not want to go back into the jury room. She also asked if an alternate juror could be put in her place. After hearing this, the trial court consulted counsel for each party and then questioned juror number four on the record, asking her whether she was willing to continue her participation in the deliberation. In response, juror number four informed the trial court that she was willing to resume her participation.

**{¶ 29}** It also came to light that juror number four was using a handheld electronic gaming device during deliberations. The trial court later questioned her about this allegation, inquiring about any use of the device during trial. The parties were satisfied with her responses that she did not use the device while testimony was being given. Chaffin was asked if he thought juror number four should continue serving as a juror, and he said that she should. Juror number four was then sent back to the jury room to continue deliberating with the other jurors.

**{¶ 30}** After the verdicts were reached, the jury's foreperson advised the bailiff that the other jurors were concerned that juror number four's verdicts were made under duress. The bailiff relayed this information to the court, and the court proposed to resolve the matter by individually polling each of the jurors about the voluntariness of their verdicts. Chaffin had no objection to this procedure and the jurors were polled regarding their verdicts. When the court asked juror number four whether the announced verdicts were hers, she responded "Yes." Trial Trans. Vol. III (May 19, 2010), p. 627. The court also asked juror number four whether her verdicts were voluntary, and she again responded "Yes." *Id.*

**{¶ 31}** Chaffin contends that the trial court abused its discretion in handling the matter with juror number four, claiming that the court should have engaged in more in- depth questioning to determine whether her verdicts were compromised. However, we note that Chaffin agreed to the procedure employed by the trial court, and has thus waived all but plain error on appeal. *State v. Hessler*, 90 Ohio St.3d 108, 121, 734 N.E.2d 1237 (2000), citing *State v. Hill*, 73 Ohio St.3d 433, 444, 653 N.E.2d 271 (1995).

**{¶ 32}** The trial court's procedure in handling juror number four does not amount to plain error, as we previously addressed this matter in the direct appeal of Chaffin's co-defendant in *State v. Pennington*, 2d Dist. Montgomery No. 24090, 2011-Ohio-4445. In that opinion we explained that:

> In an analogous situation, the Ohio Supreme Court found that a trial court's
> polling of the jury individually after a juror was crying and refusing to re-enter the
> court room provided evidence that the juror's verdict was a product of her own
> free will. *State v. Hessler*, 90 Ohio St.3d 108, 120, 2000-Ohio-30. That court

further noted that the appellant had specifically agreed to the procedure used and waived all but plain error. *Pennington* at ¶ 33. We concluded in *Pennington* that "[t]he trial court followed the same procedure used by the trial court in *Hessler* and scrupulously safeguarded appellant's rights." *Id*. at ¶ 34.

**{¶ 33}** According to Chaffin, the jury poll was insufficient to determine the voluntariness of juror number four's verdict given the concerns expressed by the other jurors. However, the fact remains that during the jury poll, the trial court gave juror number four an opportunity to explain whether she agreed with the announced verdict and specifically asked her whether her verdicts were made voluntarily. Juror number four responded affirmatively to both questions. In *Hessler*, the Supreme Court of Ohio found no issue with this procedure and, under the same circumstances, found the juror's verdict to be voluntary. *Hessler,* 90 Ohio St.3d at 115-121, 734 N.E.2d 1237. Accordingly, for the reasons discussed in *Pennington* and *Hessler*, we find no error in how the trial court handled the situation with juror number four.

**{¶ 34}** Chaffin's Fourth Assignment of Error is overruled.

**Assignment of Error No. V**

**{¶ 35}** Chaffin's Fifth Assignment of Error is as follows:

THE TRIAL COURT ERRED WHEN IT REFUSED TO GRANT APPELLANT'S MOTION FOR A MISTRIAL.

**{¶ 36}** This assignment of error was also raised in Chaffin's original appeal, and like Chaffin's Fourth Assignment of Error, we did not rule on it because we found the claim to be moot. However, given that we have affirmed the trial court's decision on remand to overrule

Chaffin's motion to suppress, this assignment of error is also now ripe for review.

{¶ 37}    Under this assignment of error, Chaffin claims the trial court erred in failing to grant a mistrial based on an alleged violation of the rule announced in *Bruton v. United States*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968).   The rule in *Bruton* was summarized by the Supreme Court of Ohio in *State v. Moritz*, 63 Ohio St.2d 150, 407 N.E.2d 1268 (1980):

"In *Bruton*, the Supreme Court held that in a joint trial of two defendants, a confession of one co-defendant who did not testify could not be admitted into evidence even with a limiting instruction that the confession could only be used against the confessing defendant.   The rationale of *Bruton* was that the introduction of a potentially unreliable confession of one defendant which implicates another defendant without being subject to cross-examination deprives the latter defendant of his right to confrontation guaranteed by the Sixth Amendment."   *Id*. at 153, quoting *United States v. Fleming*, 594 F.2d 598, 602 (7th Cir.1979).

{¶ 38}    In following *Bruton*, the Supreme Court of Ohio likewise held that "[a]n accused's right of cross-examination secured by the confrontation clause of the Sixth Amendment is violated in a joint trial with a non-testifying codefendant by the admission of extrajudicial statements made by the codefendant inculpating the accused."   *Id*. at paragraph one of the syllabus.   The court also stated that:

"[T]he *Bruton* rule applies with equal force to all statements that tend significantly to incriminate a co-defendant, whether or not he is actually named in the statement.   The fact that the incrimination amounts to a link in a chain of

circumstances rather than a direct accusation cannot dispose of the applicability of the *Bruton* rule. Just as one can be convicted of circumstantial evidence, one can be circumstantially accused." (Italics added.) *Id*. at 155, quoting *Fox v. State*, 179 Ind.App. 267, 283, 384 N.E.2d 1159 (1979).

**{¶ 39}** A *Bruton* violation, however, does not arise if there are no extrajudicial statements of the co-defendant introduced at trial implicating the defendant in criminal activity. *See State v. Griffin*, 2d Dist. Montgomery No. 24001, 2012-Ohio-503 ¶ 54 (finding "the State did not present at the trial any statements made by [the co-defendant] that implicated Defendant in criminal activity. Therefore, no *Bruton* problem arises"); *State v. Porcher*, 2d Dist. Montgomery No. 24058, 2011-Ohio-5976, ¶ 19 (finding no *Bruton* violation because "neither co-defendant made any out-of-court statements that the State intended to introduce at the trial"); *State v. Hopkins*, 2d Dist. Montgomery No. 24940, 2012-Ohio-5536, ¶ 44 ("[b]ecause [the co-defendant's] statement did not implicate [defendant] in any criminal activity, we see no *Bruton* problem."); *State v. Jones*, 6th Dist. Sandusky No. S-07-029, 1998 WL 123091, *3 (Mar. 13, 1998) ("[b]ecause appellee did not introduce any statements of co-defendants which implicated appellant, separate trials were not required under the *Bruton* rule").

**{¶ 40}** In this case, Chaffin concedes that no inculpatory, extrajudicial statements of his co-defendant, Ralleigh Pennington, were admitted as evidence during their joint trial. Rather, Chaffin bases his allegations of a *Bruton* violation on remarks made by Pennington's defense counsel during opening statement. Specifically, Chaffin takes issue with the following remarks:

> Mr. Pennington is charged with aggravated robbery. The evidence will show and
>
> Mr. Kelly, the victim, will indicate Mr. Pennington ran away. He did not come

back. He ran away, if he was there. There's no evidence that Mr. Pennington did anything to Mr. Kelly. There was no evidence that Mr. Chaffin did anything to Mr. Kelly. Mr. Kelly will testify, he ran away. We're also looking at the issue of complicity and we talked about this also. If two people are together and something happens, are both of them responsible? The judge, when you go to deliberate, will tell you that the most important thing about this case is knowingly.

Was there knowledge about what was going on if Mr. Pennington is gone? Did he have knowledge that Mr. Chaffin had a knife? Did he have knowledge that he was going for him? Mr. Pennington is gone. There cannot be a robbery with Mr. Pennington gone. Complicity. There's no complicity if he had no knowledge. * * * This case is about whether two people who are together do the same thing if one of them runs away. The evidence will show this. Trial Trans. Vol. I (May 17, 2010), p. 181-182.

{¶ 41} According to Chaffin, the foregoing remarks openly concede that he and Pennington were at the scene of the crime, were attempting to commit theft, and that Chaffin had a knife. We do not agree with this interpretation, but even if we did, the fact remains that there was no admission of extrajudicial statements made by Pennington implicating Chaffin in the offense. Remarks in opening statements are not evidence and are not the kind of statements to which the *Bruton* rule applies. *See State v. Jalowiec*, 91 Ohio St.3d 220, 226, 744 N.E.2d 163 (2001) (finding that a prosecutor mentioning in opening statement that a co-defendant had previously implicated the defendant in the offense at issue is "unlike the situation in *Bruton*, [because] the statement in issue was not elicited during testimony"); *see also U.S. v. Johnson*,

581 F.3d 320, 325-326 (6th Cir.2009) (noting that a *Bruton* violation cannot occur unless there is a testimonial statement). Because there was no admission of an out-of-court statement made by Pennington implicating Chaffin in the offense, there is no *Bruton* violation. Accordingly, the trial court correctly overruled Chaffin's motion for a mistrial on that basis.

{¶ 42} Chaffin's Fifth Assignment of Error is overruled.

## Assignment of Error No. VI

{¶ 43} Chaffin's Sixth Assignment of Error is as follows:

APPELLANT WAS DEPRIVED OF EFFECTIVE ASSISTANCE OF COUNSEL.

{¶ 44} Again, this assignment of error was also raised in Chaffin's original appeal, and was not addressed due to our decision on the suppression issue. Like the previous two assignments of error, this assignment of error is also now ripe for review.

{¶ 45} Under this assignment of error, Chaffin contends that his trial counsel was ineffective in failing to move for a severance of his trial from that of his co-defendant. According to Chaffin, he was entitled to a separate trial under *Bruton* and his trial counsel's failure to request a separate trial prejudiced him. We disagree.

{¶ 46} We review allegations of ineffective assistance of trial counsel under the two prong analysis set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) and adopted by the Supreme Court of Ohio in *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989). To prevail on an ineffective-assistance claim, Chaffin must establish that his trial counsel's performance was deficient and that the deficient performance prejudiced

him.  *Strickland* at paragraph two of the syllabus.  A trial counsel's performance is deficient if the conduct complained of fell below an objective standard of reasonableness.  *Id.*  Trial counsel is entitled to a strong presumption that his or her conduct falls within the wide range of reasonable assistance.  *Id.*  As for prejudice, a trial counsel's deficient performance is prejudicial when counsel's errors are serious enough to create a reasonable probability that, but for the errors, the result of trial would have been different.  *Id.*

{¶ 47}  In this case, we do not find that the performance of Chaffin's trial counsel was deficient.  Severance of a joint trial is permitted if the joinder will result in prejudice.  *See* Crim.R. 14.  Here there is nothing in the record indicating that Chaffin was prejudiced by the joint trial with Pennington, as we have already concluded that there was no *Bruton* violation, and the record does not indicate that Chaffin was otherwise prejudiced by Pennington's defense strategy.  As a further matter, the trial court instructed the jurors at the beginning and end of trial to separately consider the evidence with respect to each defendant and to separately determine the guilt or innocence of each defendant.  Accordingly, there was no potential prejudice supporting a motion for severance nor other good cause for ordering separate trials.  *See* R.C. 2945.13.  As a result, we find that counsel's failure to move for a severance did not fall below an objective standard of reasonableness.  Therefore, Chaffin cannot satisfy the first prong of *Strickland,* and his ineffective assistance claim must fail.

{¶ 48}  Chaffin's Sixth Assignment of Error is overruled.


## Assignment of Error Nos. VII and VIII

{¶ 49}  For purposes of convenience, we will address Chaffin's Seventh and Eighth

Assignments of Error together.   They are as follows.

> VII.   THE TRIAL COURT ERRED IN IMPOSING COURT COSTS IN THE SENTENCING ENTRY WITHOUT IMPOSING COURT COSTS AT THE TIME OF SENTENCING.

> VIII.  THE TRIAL COURT ERRED IN PREEMPTIVELY DISAPPROVING OF THE TRANSFER OF APPELLANT TO TRANSITIONAL CONTROL IN THE SENTENCING ENTRY.

{¶ 50}  The claims in Chaffin's Seventh and Eighth Assignments of Error were also raised in his original appeal, but were not addressed due to our decision on the suppression issue.  As with the previous assignments of error, these assignments of error are now ripe for review.

{¶ 51}  Under his Seventh Assignment of Error, Chaffin contends that the trial court erred in ordering him to pay court costs in its June 7, 2010 termination entry, because the court failed to address the payment of court costs at his sentencing hearing.   The State concedes, and we agree, that the trial court erred in failing to inform Chaffin at sentencing that it was going to impose court costs.   In order to rectify this error, the State proposes that we remand the matter back to the trial court for the limited purpose of allowing Chaffin to seek a waiver of the court costs.   We agree with the State's proposed remedy, as we utilized the same remedy in a similar situation in *State v. Mays*, 2d Dist. Montgomery No. 24168, 2012-Ohio-838, ¶ 17.

{¶ 52}  Under his Eighth Assignment of Error, Chaffin contends that the trial court erred in prematurely disapproving of transitional control in the termination entry.   R.C. 2967.26(A)(1) allows the Department of Rehabilitation and Correction to place inmates into a transitional control program during the final 180 days of incarceration "for the purpose of closely monitoring

a prisoner's adjustment to community supervision * * *." Additionally, section A(2) of the statute provides the trial court with an opportunity to disapprove of transitional control after the court reviews a report assessing the inmate's tenure in prison. Chaffin contends that the court's disapproval of transitional control was premature, because the decision was made before he was even transferred to prison.

{¶ 53} Once again, the State concedes error and notes that this court has previously concluded that a trial court errs in including language disapproving of transitional control in a termination entry, because "the trial court's ability to approve or disapprove of transitional control occurs only after a person has been incarcerated and the adult parole authority sends a notice to the trial court indicating that it intends to grant transitional control under R.C. 2967.26(A)." *State v. Howard*, 190 Ohio App.3d 734, 2010-Ohio-5283, 944 N.E.2d 258, ¶ 2 (2d Dist.). To remedy this error, the State proposes that we instruct the trial court to issue an amended termination entry in which the language stating that the court disapproves of the transfer of the defendant to transitional control is removed. We again agree with the State's proposed remedy, as we utilized the same remedy in a similar situation in *State v. Longworth*, 2d Dist. Montgomery No. 24327, 2011-Ohio-4191, ¶ 36.

{¶ 54} Because the State concedes error, Chaffin's Seventh and Eighth Assignments of Error are sustained. The matter will be remanded for the limited purposes of permitting Chaffin to request a waiver of court costs and for the trial court to revise the language in the termination entry as instructed in this opinion.

**Assignment of Error Nos. II, III, and IX**

**{¶ 55}** For purposes of convenience, we will also address Chaffin's Second, Third and Ninth Assignments of Error together. They are as follows:

II.     THE TRIAL COURT ERRED IN OVERRULING APPELLANT'S OBJECTION TO THE STATE SUPPLEMENTING THE RECORD, ON REDIRECT, BEYOND THE SCOPE OF THE CROSS EXAMINATION.

III.    THE TRIAL COURT ERRED IN OVERRULING APPELLANT'S PROPER OBJECTION TO HEARSAY TESTIMONY THAT ALSO VIOLATED THE CONFRONTATION CLAUSE.

IX.     THE PROSECUTOR COMMITTED REVERSIBLE MISCONDUCT.

**{¶ 56}** Under each of the foregoing assignments of error, Chaffin takes issue with a specific aspect of his trial. Chaffin, however, failed to raise any of these issues in his original appeal. "Where an argument could have been raised on an initial appeal, res judicata dictates that it is inappropriate to consider that same argument on a second appeal following remand." *State v. Yates*, 2d Dist. Montgomery No. 24823, 2012-Ohio-1781, ¶ 24, quoting *State v. D'Ambrosio*, 73 Ohio St.3d 141, 143, 652 N.E.2d 710 (1995); *see also State v. Gillard*, 78 Ohio St.3d 548, 549, 679 N.E.2d 276 (1997); *State v. Roberts*, 137 Ohio St.3d 230, 2013-Ohio-4580, 998 N.E.2d 1100, ¶ 95. The foregoing assignments of error are based entirely on the trial record; therefore, Chaffin could have, and should have, raised these issues in his first appeal. Res judicata bars Chaffin from raising these issues now, and they are beyond the scope of our original remand. *See Yates* at ¶ 24.

**{¶ 57}** Chaffin's Second, Third, and Ninth Assignments of Error are Overruled.

## Conclusion

{¶ 58}   Having overruled Chaffin's First, Second, Third, Fourth, Fifth, Sixth and Ninth Assignments of Error, and having sustained Chaffin's Seventh and Eighth Assignments of Error, the decision of the trial court is affirmed in part, reversed in part, and remanded for the limited purposes of permitting Chaffin to request a waiver of court costs and for the trial court to revise the language in the termination entry as instructed in this opinion.

. . . . . . . . . . . . .

FAIN and DONOVAN, JJ., concur.

Copies mailed to:

Mathias H. Heck
Andrew T. French
Brock A. Schoenlein
Hon. Dennis J. Langer